**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**DEREK SNEAD,**

    Plaintiff,

                                    Case No.:

v.

**CITY OF LAKE CITY, FLORIDA,
MARK HUNTER**, in his official capacity
as **SHERIFF OF COLUMBIA COUNTY,
FLORIDA, HOWARD BULTHUIS,**
individually and in his supervisory capacity,
**AARON SWEARS**, individually, and
**" HALL'S PUMP & WELL, INC." d/b/a
HALL'S PUMP & WELL, INC.,**

    Defendants.

_____/

## **COMPLAINT**

    Plaintiff, Derek Snead, hereby sues Defendants, the City of Lake City, Florida, Mark Hunter in his official capacity as Sheriff of Columbia County, Florida, Howard Bulthuis individually and in his supervisory capacity, Aaron Swears individually, and " Hall's Pump & Well, Inc."[1] d/b/a Hall's Pump & Well, Inc. and states as follows:

---

[1] " HALL'S PUMP & WELL, INC." is how the name appears on sunbiz.org, including the both the quotations and the space after the initial quotation mark.

1

## NATURE OF THE ACTION

1.      This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against all Defendants.

2.      This action is brought through 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution and laws of the United States, and by 42 U.S.C. §1988 which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983. It is also brought under the common law of the State of Florida.

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      This is an action involving claims which are, individually, in excess of seventy-five thousand dollars ($75,000.00).

## PARTIES

5.      At all times pertinent hereto, Plaintiff Derek Snead has been a resident of Columbia County, FL. He is thus *sui juris*.

6.      At all times pertinent hereto, Defendant, the City of Lake City, Florida (hereinafter "City"), has been organized and exists under the laws of Florida. It

2

operates within the jurisdiction of this Court and operates the Lake City Police Department (hereinafter "LCPD").

7.   At all times pertinent hereto, Defendant Mark Hunter has been the Sheriff of Columbia County (hereinafter "Sheriff"). Sheriff operates the Columbia County Sheriff's Office (hereinafter "CCSO") within Columbia County (hereinafter the "County"). Sheriff, through the CCSO, has been organized and existing under the laws of the State of Florida and operated within the jurisdiction of this Court.

8.   At all times pertinent hereto, Howard Bulthuis has been a resident of Columbia County working for the CCSO. He is *sui juris.* He is sued in his individual and his supervisory capacity.

9.   At all times pertinent hereto, Aaron Swears has been a resident of the County working for the CCSO. He is *sui juris.*

10.   At all times pertinent hereto, " Hall's Pump & Well, Inc." d/b/a Hall's Pump & Well, Inc. (hereinafter "Hall's") has been organized and exists under the laws of the State of Florida and operating within the jurisdiction of this Court. It is *sui juris.*

## CONDITIONS PRECEDENT

11.   Plaintiff has satisfied all conditions precedent to bringing this action, if any, or they have been waived.

## BACKGROUND

12.    Beginning from at least 2018, Plaintiff was targeted by the City and Sheriff with unfounded allegations, tarnishing his reputation. By way of example, in May 2018, Plaintiff's girlfriend was involved in a minor car accident. When Plaintiff arrived at the scene, Officer Peterson of the LCPD threatened to arrest his girlfriend for remaining silent. Plaintiff told Peterson not to force his girlfriend to talk, which made Peterson angry. When Plaintiff began recording the encounter, Peterson had him arrested on false charges. The charges were later dropped.

13.    After this incident involving Plaintiff's girlfriend, he was the victim of further ongoing retaliatory and false charges. For example, in February 2019, while showing a property to a potential buyer, a real estate agent interfered with the sale by misrepresenting that Plaintiff was not authorized to sell or show the property. A deputy named Belfry responded and ejected Plaintiff from the property, causing him to lose the potential buyer.

14.    In another incident in April 2019, while in an automatic car wash, the machine caused Plaintiff's vehicle to bump into another vehicle. There was no damage to either vehicle, and Plaintiff provided his information to the other driver as required by Florida law.

15.    The other driver refused to give Plaintiff her information and insisted on calling the police. Plaintiff left the scene after satisfying all requirements under

4

Florida law and called CCSO to report his involvement. CCSO dispatched F.H.P. Officer Hernandez to the scene, who instructed Plaintiff to return. Plaintiff challenged this directive and cited the relevant statute. At the direction of CCSO, an officer named Hernandez issued two citations against Plaintiff, one for refusing to show identification and one for careless driving. Both citations were later dismissed by the Court.

16.    After the charges were dismissed, Hernandez, working with CCSO deputies, issued a third criminal misdemeanor citation against Plaintiff for leaving the scene of the car wash incident. This created further expenses and inconveniences for Plaintiff, but all charges were eventually dropped or dismissed.

## STATEMENT OF THE FACTS

17.    On June 19, 2019, one of Plaintiff's tenants falsely called CCSO and claimed that Plaintiff was breaking into his own property. Deputy Belfry arrived at the scene and detained Plaintiff in a hot patrol car without air conditioning. Belfry also threatened to tase Plaintiff and gave legal advice to the tenant.

18.    In March 2020, Plaintiff sued retired corrections officer David Moore over a breach of contract and ejectment. Plaintiff won the case but was later falsely accused of stealing property owned by Moore. These accusations resulted in criminal charges against Plaintiff for forgery, theft, and falsification of public documents. Plaintiff's reputation was damaged, and he suffered financial harm as a result.

19.     In May 2020, a civil dispute arose between Plaintiff and a person who was purchasing the vacant property from him. The buyer contacted CCSO and made false allegations against Plaintiff, including that he had created a false mortgage deed and burglarized the vacant property. False criminal charges were brought against Plaintiff for burglary and larceny by CCSO. These charges were later dropped or dismissed.

20.     On November 13, 2020, the day after the dismissal of previous charges against Plaintiff, CCSO filed new charges against him, falsely accusing him of breaking into his own mobile home. Plaintiff had entered the mobile home to photograph damage by the tenants, but the tenant falsely alleged that he had stolen property. Despite the existence of a video showing that this allegation was false, CCSO deputies made false allegations in an arrest affidavit, and Plaintiff was arrested and taken to jail.

21.     While in jail on false charges, LCPD Officer Peterson served Plaintiff with a trespassing notice for a property that Plaintiff owned. Peterson falsified a police report claiming that Plaintiff refused to sign the notice. No body camera footage has been provided to support this claim.

22.     On April 11, 2021, CCSO raided one of Plaintiff's properties and ripped up the bathroom floor. No charges were filed, and no repairs were made.

23.     On April 15, 2021, Plaintiff's vehicle door was blown back by the wind and hit another vehicle. Plaintiff went into the restaurant to compose a note with his contact information to leave on the vehicle but was accosted by a Gator employee. Plaintiff gave his contact information to the manager and left. He called LCPD dispatch to report the incident and provided his contact information. LCPD Officer Peterson responded and stated that she intended to file false charges of obstruction and criminal mischief against him. These charges were declined by the State Attorney.

24.     On May 17, 2021, Plaintiff spoke at a Lake City Council meeting about his experiences with law enforcement, specifically with LCPD Officer Peterson. Plaintiff gave detailed accounts of his experiences and stated that he was being targeted by LCPD officers. He also mentioned that Peterson had previously lied in a police report about her own injury and had lied in police reports involving Plaintiff. Plaintiff discussed that Peterson's reports referenced body camera footage, but after making public record requests for the footage, he was advised that it did not exist. Peterson resigned from her employment two weeks later.

25.     On June 13, 2021, Plaintiff spoke at a Columbia County Commissioner's meeting about the need for a citizen review board for CCSO. He identified several false reports filed against him and mentioned that several deputies had lied in their reports. Sheriff Hunter responded by lecturing Plaintiff on sovereign

immunity and stating that he did not see the need for a review board. Plaintiff responded by stating that the Sheriff was lying and had stood behind qualified immunity in other lawsuits involving the Sheriff's Office.

26.    On October 21, 2021, Plaintiff filed an injunction against a tenant who was harassing him. The tenant falsely accused Plaintiff of theft and attempted to file his own injunction. Rather than taking action against the tenant, false charges were later filed against Plaintiff for theft of his own shed and trespassing on his own property. These charges were later dropped or dismissed by the Office of the State Attorney.

27.    On November 4, 2021, Plaintiff filed an eviction notice against former tenant Charles Lucas for squatting. On November 21, 2021, while slowly driving past the rental property and taking pictures under the advice of his legal counsel, Lucas called LCPD to falsely report that Plaintiff was going after his children. Plaintiff had a video showing that he did nothing wrong.

28.    After the incident on November 21, 2021, LCPD Officer Parisi was dispatched to the scene and threatened Plaintiff, handcuffed him, and refused to watch the video showing that the tenant had made false allegations against him. Without conducting an investigation, Plaintiff was falsely charged with tag and registration offenses and arrested. His truck and trailer were towed at further expense.

29.     The tenant falsely accused the Plaintiff of picking up small children. There was video evidence that showed Plaintiff had spoken to no one and that no children were present. D.C.F. was present at the residence at the time, but no charges were brought against the tenant. The Plaintiff was falsely informed that D.C.F. would be contacted for their witness statement.

30.     There were over ten squad cars and 14 deputies and officers from both the Columbia County Sheriff's Office (CCSO) and the Lake City Police Department (LCPD) present at the scene. Plaintiff requested body camera footage of the incident, and some of the videos were provided. One of the videos showed LCPD and CCSO disparaging the Plaintiff and local activist Sylvester Warren, referring to them as community agitators and commenting about their attendance at City Council meetings.

31.     During transport to jail, LCPD Officer Parisi acknowledged that he had previously threatened the Plaintiff while a police officer in Live Oak, Florida. The Plaintiff told Parisi that he had done nothing wrong and made a bet with him that the charges would be dropped. Parisi accepted the bet, and the charges against the Plaintiff were later dropped or dismissed.

32.     On November 28, 2021, Plaintiff attempted to make complaints against tenants from two separate incidents, but both CCSO and LCPD refused to take his reports. On December 4, 2021, while showing a property to a new tenant, the former

tenant, who had previously accused the Plaintiff of picking up children, called CCSO, and Deputy Lucas responded. Upon arrival, Lucas told the prospective tenant that Plaintiff was a bad person and not to do business with him. He also yelled at the Plaintiff and made statements that affected his relationship with the new tenant.

33.     In front of the prospective tenant, Deputy Lucas referred to the number of times CCSO had investigated the Plaintiff for fraud and forced him to leave his own property under threat of arrest and revoke his active bond. Two days later, Plaintiff found further damage to his property, but CCSO refused to take his report, stating that the tenant "had a lease."

34.     While attending a property auction at the Columbia County Courthouse on January 24, 2022, Plaintiff was approached by CCSO Deputy Stalnaker. Stalnaker asked Plaintiff how he was doing in a snarky voice. The Plaintiff had previously posted on Facebook about sustained allegations against Stalnaker for drinking and driving, and stealing liquor. In response to Stalnaker's question, Plaintiff told him to leave him alone. Stalnaker then intimidated Plaintiff by following him to the elevators and telling him to watch himself and that comments like that could get him hurt. Stalnaker's partner then evicted the Plaintiff and his sister from the courthouse, causing them to miss the auction.

35.     In January 2022, Plaintiff contracted with Hall's to install a well on one of his properties and paid over $5,000 for the work. On February 18, 2022, Hall's

employees were assisted by CCSO members in stealing the well from the Plaintiff's property. CCSO Lieutenant Howard Bulthuis, whose wife and stepson worked for Hall's, was instrumental in getting CCSO Swears to steal the Plaintiff's property, despite the readily available legal remedies available to a Florida contractor for alleged nonpayment. See, e.g., Fla. Stat §713.001, et seq.; see also Leonard Klingen, Florida's Unwieldy but Effective Construction Lien Law, Fla. B.J., January/February 2019.

36.     CCSO Swears, acting at the direction of CCSO and Defendant Bulthuis, met with the owner or principals of Hall's. Swears' body camera footage showed him making disparaging comments about the Plaintiff to Hall's employees and to the Plaintiff's tenant. Swears accused the Plaintiff of falsely acquiring property and committing renter fraud. The footage also showed Hall's employees paying Swears money and Swears to accept the bribe after they had removed the Plaintiff's water well without his intervention. The footage includes but is not limited to these events on the bodycam:

- Video at 00:17: Plaintiff's tenant states that "it's attached to the house; that's against the law, right?"

- Video at 00:45: Swears tells Plaintiff's tenant that he was told by Lieutenant to come out here and allow them to come to take it.

- Video at 7:41: Swears states, "it's attached to my property, and they don't have permission to take it."

11

- Video at 12:53: Employee of Hall's hands Deputy Swears an unknown amount of currency. Deputy Swears initially attempted to give the currency back but was rejected and thus kept it.

However, despite Plaintiff and his tenant's objection, Hall's refused to leave the scene, and Swears ignored their objections – telling them to "call" his lieutenant (Bulthuis), who told Swears to let Hall's take the property regardless. Moreover, when Plaintiff objected, Swears told him to come out to the scene so he could be arrested.

37. Two days prior to this incident, Plaintiff had issued a written trespass notice to Hall's employees to prevent them from entering his property without invitation. CCSO was made aware of this notice prior to the theft of the well by Hall's. The following week, CCSO Sgt. Green went to the Plaintiff's property to coerce his tenant into falsely stating that he had given permission for Hall's to take the well, but the tenant rejected this request.

38. Sheriff learned of the bribe, but no one was publicly made aware of it. It was only by chance that the Plaintiff requested a copy of all videos of the incident and saw the payoff between Hall's and Swears. Swears was not fired but received only a two-day suspension. His supervisor, Bulthuis, who has family connections with Hall's, received a 10-day suspension. Neither Swears nor Bulthuis was placed on the Brady/Giglio list of officers who engage in questionable behavior, despite the use of "self-help" by Hall's and its support by law enforcement regardless of the

12

availability of proper legal remedies for an alleged unpaid contractor. See, e.g., Fla. Stat §713.001.

39.    On February 3, 2022, CCSO Detective Elliott issued another warrant against Plaintiff for "stealing" from his own property. On March 9, 2022, Alachua County Sheriff's Deputies raided one of the Plaintiff's properties at the request of CCSO in search of him on warrants that CCSO knew to be false. LCPD Officer Andrew Mangrum had falsely charged that the Plaintiff had sold a house in Suwannee County and committed fraud, impersonation, grand theft, and other charges outside of LCPD's jurisdiction.

40.    CCSO pursued charges against the Plaintiff by sending them to the Alachua County Sheriff's Office (ACSO), where they believed he was residing. ACSO then went to the Plaintiff's property in Alachua County with SWAT gear and guns drawn, intimidating his tenants and defaming him by labeling him as a thief based on documents from LCPD and CCSO.

41.    In 2022, Plaintiff was trying to incorporate his business and file for a business bank account, but he was denied by multiple banks. He discovered that his Driver and Vehicle Information Database (DAVID) information had been compromised, and his current address had been changed to an address in Murphy, North Carolina, that he does not use. This database can only be edited by law enforcement and criminal justice officials.

13

42. On April 1, 2022, Plaintiff was arrested and charged with grand theft with damage over $1,000 for obtaining property by false impersonation and extortion. His initial bond amount was $50,000 but later rose to $500,000 at a hearing where it was alleged that he was a flight risk because he owned property in Alaska, which he does not. The presiding judge considered information provided about the Plaintiff's history with CCSO and the State Attorney, despite him having no criminal history. The judge was also told that there were further investigations and charges against the Plaintiff forthcoming.

43. On April 2, 2022, additional false charges were added, and the Plaintiff was charged with resisting arrest with another $10,000 bond assessed against him. He had to pay $51,000 to get out of jail, and this money has not been returned to him. These false charges were dropped or dismissed 45 days later. CCSO body camera footage showed that a CCSO deputy had lied in the probable cause affidavit to effect the additional charge of resisting arrest.

44. On May 24, 2022, the Plaintiff was falsely accused of theft by the prospective buyer of one of his properties. The buyer, unable to complete the purchasing process, resorted to issuing threats of physical harm to Plaintiff and providing false information to CCSO. The Plaintiff was deprived of the chance to file a police report or seek a restraining order against the individual and was instead wrongfully accused of stealing a generator and a welder. These charges were

14

supposedly dismissed on June 24, 2022, but CCSO failed to update this information, leading to additional complications for the Plaintiff.

45.     On June 26, 2022, David Poppell, a civilian with prior theft charges, was caught on camera stealing the Plaintiff's travel trailer from one of his properties. The Plaintiff filed a report with CCSO, but they accused him of not owning the trailer or its contents and refused to investigate the theft.

46.     During this time, CCSO deputies made numerous visits to the Plaintiff's tenants, slandered and defamed him, and prevented him from working on and maintaining his properties. They specifically instructed his tenants to call if they saw him. On June 27, 2022, Plaintiff was prohibited from entering the Columbia County Courthouse due to the warrant from May 24 not being properly rescinded by CCSO.

47.     On June 28, 2022, Plaintiff was pulled over and detained by CCSO due to the status of his warrant not being updated in the system. He was detained for less than an hour while his lawyer explained that the charges had been withdrawn and the warrant for his arrest had been rescinded. Once released from detainment, Plaintiff told the deputy that he wanted to file a complaint against the tenant who had made false charges against him.

48.     After the incident on June 28, 2022, the deputy on the scene disrupted the filing process for the Plaintiff's complaint by stating that it was raining, it was

15

late in the day, and his shift was about to end. The deputy said he would handle the complaint the following day but never followed up or contacted the Plaintiff.

49.     On July 9, 2022, LCPD officers denied Plaintiff the opportunity to file a report against Mario Coppock, a county employee who stole money that Plaintiff had donated to the Richardson Center at a cake auction. The Plaintiff was told he could not file the report because he was not aggrieved. This act was caught on camera, and LCPD employees watched it, but the Plaintiff's public records request for the incident was never responded to.

50.     In late 2022, Plaintiff was investigated by CCSO for the fraudulent conveyance of real estate. CCSO Deputy DiSilva admitted that she did not know what a trust was or how it worked and had not contacted the sellers of the property in question. Despite being told by the previous property owner that Plaintiff had purchased it, CCSO continued to try to concoct false criminal charges against him. As a result of this fraudulent investigation, the Plaintiff lost the sale of this property.

51.     In December 2022, Plaintiff turned in three police reports against past tenant Elijah Brewington for damaging his property. These reports were given to CCSO Agent Jimmy Watson, but no action was ever taken on them.

52.     After the incident in December 2022, Plaintiff spotted Elijah Brewington on his property and called CCSO to apprehend him. Plaintiff alleged past criminal activity, harboring weapons, driving illegally, and making false

16

statements against him. However, instead of acting against Brewington, CCSO threatened Plaintiff with trespassing from a neighboring hotel property where Brewington had been sleeping. CCSO refused to take statements from witnesses or view camera footage corroborating Plaintiff's allegations.

53.    Plaintiff followed Brewington to LCPD jurisdiction at Walmart and called the police to arrest him. Instead, LCPD met with the Plaintiff and Brewington and then trespassed the Plaintiff on behalf of Walmart after asking them to sign a trespass warning. Neither LCPD nor CCSO asked to search Brewington's belongings or vehicle for the items that Plaintiff said he had stolen.

54.    In January 2023, while tending to one of his properties, Plaintiff discovered that squatters had entered the property and stolen some of his security cameras. He went to secure the property and show it to prospective tenants but learned that the squatters had already been there and had stolen the security footage. The squatters were the neighbors' children or nonbiological associates and attempted to run the Plaintiff over, which was captured on security footage. The Plaintiff reported this to CCSO, but they did nothing.

55.    In February 2023, the Plaintiff was falsely accused of burglary, theft, stalking, robbery, and larceny by a tenant whom he was suing and evicting. The Office of the State Attorney refused to authorize his arrest on these charges. Despite having video footage showing that he committed no wrongdoing, CCSO refused to

17

use it as evidence. Plaintiff complained against the deputies who refused to investigate, but CCSO would not accept it or respond to public information requests about their actions.

56. A few weeks after the incident in February 2023, the Plaintiff was trespassed from a property he had purchased and paid for. The former legal owner was Belinda Bowser, but her son became violent upon learning of the sale of the property and the obligation for him to move out. The Plaintiff called CCSO, but they took a long time to arrive and had to call him as he had already left. The CCSO deputy told the Plaintiff that he was being trespassed from the property, even though he had already purchased it.

57. The CCSO deputy who called Plaintiff to deliver the news of him being trespassed would not give her name. However, as a result of a public records request, Plaintiff learned that CCSO deputy Jimmy Watson was involved and had arrived at the scene at the request of Bowser, although he is not named in any police report.

58. After being accused of trespassing, Plaintiff filed charges against Belinda Bowser or her son for stealing his money, threatening, and assaulting him. This had occurred when Plaintiff was finalizing the sale transaction, and Bowser threatened him with a machete.

59. After the incident in March 2023, Plaintiff learned that Belinda Bowser, the former owner of the property from which he had trespassed, was friends with

18

CCSO deputy Jimmy Watson and lived or used to live on his or his father's property. Bowser texted the Plaintiff that Watson had told him to "f*** off."

60.    In April 2023, while in the process of evicting tenants, a false police report was made by the tenants alleging that the Plaintiff had committed robbery and burglary of his own property by stealing the electrical panel and cutting water lines. A cursory investigation by LCPD would have shown that the electrical panel was still in place and that Plaintiff was not even in town at the time of the alleged incident. Nonetheless, he was placed under investigation for burglary and criminal mischief by LCPD, but these charges were not pursued by the Office of the State Attorney.

61.    In April 2023, Plaintiff's next-door neighbor put up a fence and gate on his property, blocking access to Plaintiff's property. The Plaintiff was later charged by CCSO with a misdemeanor for taking down the gate. CCSO also gave unsolicited legal advice to one of the Plaintiff's tenants on a surrounding property, causing the Plaintiff to lose both the existing tenant and a potential new buyer.

62.    The Plaintiff was later advised that the charges against him for burglary and criminal mischief had been upgraded to felony charges. However, these charges were dropped or dismissed after providing photographs of the property to the Office of the State Attorney.

63.    After the incident in April 2023, Plaintiff was informed that T.D. Bank had closed his accounts and those of his relatives and prohibited them from doing

future business with the bank. CCSO had informed the bank of the Plaintiff's DAVID information and past false charges, alluding to the idea that he was a criminal and accusing him of being a scam artist. The bank informed Plaintiff by email that it had closed his account and could do so without reason at any time.

64.     After the charges against him were dropped, the Plaintiff filed a police report with LCPD against one of the tenants who had made false allegations against him and had destroyed and stolen items from one of his properties. To the best of his knowledge, no action was taken by LCPD on these reports.

65.     In May 2023, Plaintiff continued to face harassment and obstruction from CCSO while conducting his business. His employee, Dillon Lollis, was detained and arrested by CCSO while working on the Plaintiff's properties. After the Plaintiff advised CCSO that Lollis was on business orders, Deputy Corporal Douglas told him to come "help" his "buddy" and then threatened to find and arrest him too. CCSO eventually trespassed the Plaintiff from his own property, preventing him from caring for it and correcting code violations caused by tenants.

66.     Over the past several years, tenants and others have been directed or encouraged by Defendants to file complaints against Plaintiff. They have made false and defamatory statements about him, concocted false charges against him, and seriously adversely affected him economically, physically, and emotionally. None

20

of the offenses and charges enumerated herein have resulted in a criminal conviction, adjudication, or plea.

67.    At all times pertinent to this lawsuit, the Plaintiff commonly attended City Council and County Commission meetings and spoke about police misconduct, such as falsified police reports, failure to take action on his police reports, inappropriate use of the K-9 unit, and the need for a citizen review council due to a lack of general oversight for officers. The Plaintiff also brought attention to the criminal activity of County Member and Richardson Center board employee Mario Coppock for stealing donated money intended for a cake auction at the Richardson Center.

68.    The Plaintiff further alleged criminal conspiracy by CCSO, LCPD, and the County Attorney for neglecting to bring charges against Coppock for his actions. Members of the Richardson Center Community Board viewed footage of the criminal activity at the Plaintiff's request but did not take corrective action.

69.    Furthermore, the Plaintiff informed participants in these meetings about misconduct committed by council members, including Robby Hollingsworth, who was named in an F.B.I. document where former State Attorney Jeffrey Siegmeister gave a proffer naming him and others for doing cocaine, and Councilman Eugene Jefferson for his criminal behavior and mistreatment of subordinates. The Plaintiff also raised awareness of the City Attorney's prior criminal activity. His

21

announcement of these questionable acts has likely led to further retaliation from LCPD and CCSO.

70. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Each Defendant should be made to pay said fees under the laws referenced above.

## COUNT I
## FOURTH AMENDMENT VIOLATION - FALSE ARREST
### (Against Sheriff)

71. Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22m 25, 26, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

72. This Count sets forth a claim against Sheriff (CCSO) as its deputies, employees, and agents operated to violate Plaintiff's rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character of which any reasonable agency or deputy trained in police work would be aware.

73. The foregoing actions of Sheriff were taken in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton disregard of human rights, safety, and property, and were engaged in without any lawful justification and in the absence of probable cause. The Sheriff knew or should have known that there was no probable cause or other legal justification to arrest, detain or otherwise charge

22

Plaintiff with criminal charges, given the circumstances present with Sheriff's deputies and other personnel, including but not limited to the individual Defendants.

74. Based upon the facts presented to the Sheriff, through the actions of his officers, employees, and agents and applicable law, no reasonable law enforcement agency or officer could have concluded that any probable cause existed to arrest, detain or charge Plaintiff. The law was well settled and clearly established that the actions of the Sheriff, his delegates, deputies, officers, employees, and agents constituted false arrests under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

75. The actions of Sheriff as set forth above constituted deliberate indifference and/or reckless disregard for the safety of Plaintiff when it knew of and disregarded a risk to Plaintiff's health and safety.

76. Sheriff acted with deliberate indifference in the failure to implement adequate hiring and supervisory procedures or implemented no such policies or procedures to prevent the harm that was caused to Plaintiff, including policies or procedures to properly identify suspects, policies, and procedures to identify officers who falsify facts to support probable cause to arrest persons like Plaintiff, and policies and procedures to properly discipline officers who willfully trample on the constitutional rights of law-abiding citizens, like Plaintiff, and to prevent the type of harm described in part above, as a direct result of which Plaintiff was falsely

23

arrested, detained and/or charged. Sheriff was also deliberately indifferent in failing to train its officers, which resulted in constitutional violations as set forth in part above.

77.   Sheriff and his supervisors are responsible for hiring and supervising the law enforcement agents who work under them and, when necessary, for investigating alleged wrongdoing by its employees and disciplining them. At all times referred to herein, Sheriff and his supervisors acted under color of state law and failed to supervise, investigate and discipline the individually named Defendants and other deputies, employees, and agents as alleged herein, and were deliberately indifferent in their training, the results of which were constitutional violations.

78.   The Sheriff and his supervisors' failure to supervise, investigate and discipline the individually named Defendants and other deputies, employees, and agents constitutes either an improper policy or the absence of a policy of the Sheriff which resulted in the deliberate indifference to the constitutional rights of the Plaintiff set forth above. The Sheriff and his supervisors also, after notice of the constitutional violations alleged herein, officially sanctioned these actions and refused to appropriately discipline the individually named Defendants and other officers, employees, and agents which established a policy, by a final policymaker, that directly or indirectly resulted in the violation of Plaintiff's constitutional rights.

24

79.     As a direct and proximate cause of Sheriff's actions, Plaintiff has been damaged, which damages include: mental anguish, pain, and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future. The defendant is jointly and severally liable to Plaintiff.

## COUNT II
## COMMON LAW FALSE IMPRISONMENT/ARREST
### (Against Sheriff)

80.     Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

81.     This is an action against Sheriff, in his official capacity, for common law false imprisonment/arrest. This Count is pled in the alternative, and for the purposes of this Count, the Defendants and other employees and agents acted within the course and scope of their employment with Sheriff.

82.     Plaintiff is entitled to relief against the Sheriff in that he, through his employees and/or agents, intentionally and unlawfully detained and restrained Plaintiff when Plaintiff was unlawfully seized and deprived of his liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

83. This unlawful restraint of Plaintiff's liberty was also accomplished by the Sheriff confining Plaintiff to an area in which he did not wish to be confined.

84. Plaintiff was further restrained by the Sheriff's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so Plaintiff was restrained and deprived of liberty. The Sheriff restrained and imprisoned Plaintiff without any justification and in the absence of probable cause. Defendant, through his agents and assigns, has repeatedly detained and/or arrested Plaintiff and caused false charges to be brought against him over a period of years. Defendant knew or should have known of the actions of his deputies in effecting these arrests and actions.

85. At all times material to this action, and at all times during which Plaintiff was unlawfully restrained, Plaintiff was restrained against his will and without consent so that he was not free to leave his place of confinement.

86. As a direct and proximate cause of Sheriff s actions, Plaintiff has been damaged, which damages include: mental anguish, pain, and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future. The defendant is jointly and severally liable to Plaintiff.

## COUNT III
## FOURTH AMENDMENT VIOLATION - FALSE ARREST
### (Against City)

87.     Plaintiff realleges paragraphs 1-6, 11, 12, 21, 23, 24, 27-32, 39, 49, 53, 60, 64, and 66-70 above and incorporates those allegations in this Count.

88.     This Count sets forth a claim against City, as its officers (LCPD), employees, and agents operated to violate Plaintiff's rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character of which any reasonable agency or officer person would be aware.

89.     Through its officers, employees, and agents, City misused its power, possessed by virtue of state law, and made possible only because it and its officers, employees, and agents were clothed with the authority of state law. The violations of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983. City is a person under the laws applicable to this action.

90.     The foregoing actions of the City were engaged in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton disregard of human rights, safety, and property, and were engaged in without any lawful justification and in the absence of probable cause. City knew or should have known that there was no probable cause to arrest Plaintiff given the circumstances present

27

and the clearly established law on the proof needed to establish "arguable probable cause."

91.     Based upon the facts presented to City through its officers, employees, and agents and applicable law, no reasonable law enforcement agency or officer could have concluded that there existed any probable cause to arrest Plaintiff. The law was well settled and clearly established that the actions of City's officers, employees, and agents constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

92.     The actions or inactions of City, as set forth in part above, constituted a deliberate indifference or reckless disregard for the safety of Plaintiff when it knew of and disregarded a risk to Plaintiff's health and safety.

93.     City acted with deliberate indifference in the failure to implement adequate hiring and supervisory procedures or implemented no such policies or procedures to prevent the harm that was caused to Plaintiff, including policies or procedures to properly identify suspects, policies, and procedures to identify officers who falsify facts to support probable cause to arrest persons like Plaintiff, and policies and procedures to properly discipline officers who willfully trample on the constitutional rights of law-abiding citizens, like Plaintiff, and to prevent the type of harm described in part above, as a direct result of which Plaintiff was subjected to unreasonable and illegal searches and seizures. City was also deliberately indifferent

28

in failing to train its officers, which resulted in constitutional violations as outlined in part above.

94.    City's Police Chief and supervisors are responsible for hiring and supervising the law enforcement officers who work under them and, when necessary, for investigating alleged wrongdoing by its employees and disciplining them. At all times referred to herein, City's supervisors acted under color of state law and failed to supervise, investigate and discipline the individually named officers, employees, and agents as alleged herein, and were deliberately indifferent in their training, the results of which were constitutional violations.

95.    The City, through its final policymakers and its supervisors' failure to supervise, investigate and discipline the individually named officers, employees, and agents constitutes either an improper policy or the absence of a policy of the City which resulted in the deliberate indifference to the constitutional rights of the Plaintiff set forth above. After notice of the constitutional violations alleged herein, the City's supervisors officially sanctioned these actions and refused to discipline the individually named officers, employees, and agents who established a policy by a final policymaker that directly or indirectly resulted in the violation of Plaintiff's constitutional rights.

96.    As a direct and proximate cause of City's actions, Plaintiff has been damaged, which damages include: grave mental anguish, pain, and suffering, loss of

29

capacity for the enjoyment of life, embarrassment, humiliation, lost wages, other tangible losses, loss of reputation, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future.

**COUNT IV**
**COMMON LAW FALSE IMPRISONMENT/ARREST**
**(Against City)**

97.    Plaintiff realleges paragraphs 1-6, 11, 12, 21, 23, 24, 27-32, 39, 49, 53, 60, 64, and 66-70 above and incorporates those allegations in this Count.

98.    This is an action against City for common law false imprisonment/arrest. This Count is pled in the alternative, and for the purposes of this Count, the employees and agents identified herein who were employed with the City were acting within the course and scope of their employment with City.

99.    Plaintiff is entitled to relief against the City in that the City, through its employees and/or agents, intentionally and unlawfully detained and restrained Plaintiff when Plaintiff was unlawfully seized and deprived of his liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

100.   This unlawful restraint of Plaintiff's liberty was also accomplished by City confining Plaintiff to an area in which he did not wish to be confined.

101.   Plaintiff was further restrained by City's use of coercive words and threats of force as well as actual force and immediate means of coercion against

30

Plaintiff, so Plaintiff was restrained and deprived of liberty. Through its agents and employees, the City restrained and imprisoned Plaintiff without any justification and in the absence of probable cause. Defendant, through its agents and assigns, has repeatedly detained and/or arrested Plaintiff and caused false charges to be brought against him over a period of years. Defendant knew or should have known of his deputies' actions in effecting these arrests and actions.

102.   As a direct and proximate cause of City's actions, Plaintiff has been damaged, which damages include: mental anguish, pain, and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future.

**COUNT V**
**FOURTEENTH AMENDMENT VIOLATIONS**
**(Against Sheriff)**

103.   Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

104.   This Count sets forth claims against Sheriff for abuse of power and the violation of Plaintiff's property and liberty interests under the Due Process clause of the Fourteenth Amendment, brought through 42 U.S.C. §1983. This Count is set forth in the alternative, and both the procedural and substantive Due Process rights

of the Plaintiff are implicated, and a claim for outrageous and shocking conscious conduct is made herein.

105.   Sheriff violated the substantive and procedural Due Process clause of the Fourteenth Amendment by conducting illegal stops, illegally arresting and detaining Plaintiff, causing the malicious criminal prosecution of Plaintiff, making illegal, false sworn statements in official documents regarding Plaintiff, preventing him from assess to his property, soliciting complaints against him, and arresting one of his employees while conducting business for Plaintiff, thus violating the civil and constitutional rights of Plaintiff for which there was no justification or legal basis. No process was available to Plaintiff to prevent or stop Defendant and his officers, employees, and agents from taking these illegal actions against him. The actions against Plaintiff were taken knowingly, maliciously, and unlawfully, and under color of state law.

106.   Sheriff misused and abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

107.   Sheriff is a person under applicable law and is liable to Plaintiff for the violation of legal and constitutional rights. Defendant delegated final policymaking

to the officers, employees, and agents to make the decisions adversely affecting Plaintiff.

108.   Sheriff acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for human rights, safety, and property. The defendant was further deliberately indifferent in failing to properly train his officers, employees, and agents to prevent the harm that was caused to Plaintiff, including policies or procedures to properly identify suspects who committed criminal activity; policies and procedures to identify officers who falsify facts to support probable cause affidavits; policies and procedures to supervise officers/deputies in Sheriff's employ; policies and procedures to detect officers/deputies who may engage in tortious and/or criminal activity involving innocent citizens like Plaintiff; and policies and procedures to properly discipline officers/deputies who willfully trample on the constitutional rights of law-abiding citizens like Plaintiff, and to prevent the type of harm described in part above.

109.   At all times pertinent hereto, Sheriff was responsible for (1) creating, adopting and implementing rules, regulations, orders, policies and procedures in the proper and effective hiring, supervising and retaining of law enforcement officers who do not have a propensity towards falsifying probable cause affidavits to effect arrests and detentions; (2) creating, adopting and implementing rules, regulations, orders, policies and procedures for the proper and efficient training of law

enforcement officers in a way and to an extent necessary to ensure that the officers are properly completing probable cause affidavits and determine when persons can have access to their own property; (3) creating, adopting and implementing rules, regulations, orders, policies and procedures for proper policing, enduring the elimination of corruption in his ranks and to ensure that his officers/deputies are properly detaining persons like Plaintiff with reasonable suspicion and arresting with probable cause; (4) creating, adopting and implementing rules, regulations, orders, policies and procedures for the proper and efficient supervision, control, discipline and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subject to takings and exclusion from their property, being detained, and being subject to bribery; and (5) to implement rules, regulations, policies, orders and procedures for the elimination or reduction of instances of untruthfulness, including the unlawful arrests and instances of corroboration or ratification of untruthful accounts of criminal and tortious activities.

110.   The failures attributed to Sheriff above, including his ratification of his deputies, agents, and employees' behavior, were a moving force or proximate cause of the injuries to Plaintiff.

111.   The actions, inactions, well-settled policies, customs, practices, and procedures referenced above were the moving force behind the violation of Plaintiff's rights. Sheriff was grossly negligent, reckless, and/or deliberately

34

indifferent to the health, safety, and welfare of Plaintiff in that he assented to the failure to properly train, supervise, control, and conduct proper investigations into prior arrests by his deputies, agents, and employees and to screen and review them for continued employment. As a result, the Sheriff knew or had reason to know that they would act unlawfully, and he failed to stop his actions, resulting in the violations of Plaintiff's civil rights.

112.    As a direct and proximate result of the actions of Sheriff Plaintiff has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future.

## COUNT VI
## SECTION 1983 MALICIOUS PROSECUTION
### (Against Sheriff)

113.    Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

114. The actions of Sheriff deprived Plaintiff of rights secured under the United States Constitution, namely, the Fourth and Fourteenth Amendments.

115. The deprivation by Sheriff of Plaintiff's Fourth and Fourteenth Amendment rights occurred under color of state law.

35

116. Based on the false information prepared and filed by Sheriff, an original criminal judicial proceeding was commenced against Plaintiff.

117. Sheriff was the legal cause of the criminal judicial proceeding commenced against Plaintiff for violations of Florida law.

118. There was ultimately a bona fide termination of that proceeding in favor of Plaintiff, in that the charges, plea, and conviction were ultimately vacated by the Court in connection with Sheriff's misconduct.

119. There was no probable cause for the original criminal judicial proceeding against Plaintiff for any violation of Florida law.

120. At all material times, Hunter was responsible for the Sheriff's Office, its agents, and employees, including supervising, overseeing, training, and establishing policies, customs, and procedures to conform their conduct to the United States Constitution and Florida common law.

121. At all times material hereto, Hunter was responsible for implementing and enforcing rules, policies, practices, customs, and procedures for the proper and efficient supervision and control of the Sheriff. These duties include, but are not limited to:

> (a) To require the enforcement of existing formal rules, regulations, practices, and procedures, including, but not limited to, the operation of body video cameras during critical times in the arrest and search processes;

(b)  To implement and enforce rules and regulations, practices and procedures for proper policing, ensuring elimination of unlawful arrests without reasonable suspicion or probable cause;

(c)  To implement and enforce rules and regulations, practices, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subjected to unlawful arrests by the agents and employees of the Sheriff's Office; and

(d)  To implement and enforce rules, regulations, policies, practices, and procedures for the proper and efficient supervision, discipline, control, and investigation of law enforcement officers to reduce or eliminate instances of untruthfulness, including illegal searches and seizures and unlawful arrests.

122.  Bulthuis established a pattern and custom of engaging in violations of formal Sheriff's policies designed for the protection of the civil and constitutional rights of citizens, of which Hunter or Hunters's designed supervisors and administrative staff were aware or of which Hunter or the supervisors  and administrative staff should have been aware. Bulthuis was  not counseled on correcting such policy violations by any of his supervisors, including Hunter. Hunter and his designated administrative staff knew or should have known Bulthuis had a propensity for misconduct, including the filing of incorrect or knowingly false affidavits against members of the public.

123.  Hunter was on notice of his administrative staff and supervisors' custom and practice of failing to properly investigate (and thus address and correct)

37

the extreme and wanton acts of Bulthuis and failed to do so, leading to Plaintiff's deprivation of civil rights. The deprivations of civil rights, of which the circumstances described herein were a material part together constituted a widespread pattern sufficient to notify Hunter and were obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

124. By the implementation and maintenance of informal customs, practices, and procedures referenced above and the other actions outlined above, Hunter was grossly negligent, reckless, or deliberately indifferent to the health, safety, and welfare of Hunter, in that Hunter expressly acknowledged and assented to the failure to properly supervise, control, conduct a proper investigation into wrongful behavior, or review for continued employment, the person and conduct of Bulthuis. As a result, Hunter knew or had reason to know that Bulthuis would act unlawfully, and he failed to stop Bulthuis's actions, resulting in the violation of Hunter's civil rights.

125. In addition (or in the alternative), Hunter, in fact, delegated the final authority of the Sheriff's Office for the conducting of searches, arrests, and the making and filing of incident reports and arrest affidavits to Bulthuis and/or to Bulthuis's immediate supervisors.

126. The above-described well-settled informal customs and policies

demonstrated a deliberate indifference on the part of Hunter, as the policymaker of the Sheriff's Office, to the constitutional rights of persons within the County and were a moving force or proximate cause of violations of Plaintiff's rights alleged herein. Despite knowing of the unconstitutional behavior and the need to take corrective action, Hunter declined to do so.

127.    The actions committed by Bulthuis against Plaintiff were proximately caused by the well-settled informal policies, customs, practices, and procedures of Hunter, which were also the moving force behind Plaintiff having his civil rights violated.

128.    Under the above circumstances, Bulthuis also had a duty to enforce existing formal procedures requiring the independent objective review by other law enforcement officers of Bulthuis' body camera videos, incident reports, and arrest affidavits but failed to do so.  In this case, a review of the body camera video of the search by Bulthuis of the vehicle of Plaintiff would have revealed the potential for wrongdoing by Bulthuis as described in this complaint.

129.    Under the above circumstances, Bulthuis personally (or through his designated agents and supervisors of Bulthuis) had notice of the need to review the body camera videos, incident reports, and arrest affidavits and to independently confirm the reasonableness of drug-related arrests by Bulthuis, but failed to do so.

39

130.   Bulthuis has also, with deliberate indifference as to the possibility of the unlawful prosecution of persons encountering Bulthuis or other County deputies, failed to adequately otherwise supervise the County Sheriff's Office and its Deputy Sheriffs concerning the rights of the citizens they encounter in their duties, such that it is a well-settled policy, practice, and custom for County deputies, including Bulthuis, to take extreme and reckless actions against the citizens of County they encounter, including Plaintiff, all in the name of law enforcement, causing or contributing to deputies' violations of the constitutional rights of innocent citizens.

131.   The need for more or different supervision and review and the inadequacy of the existing supervision and review were obvious and, when combined with Bulthuis's conscious choice not to act and deliberate indifference, caused or contributed to causing the violation of citizens' constitutional rights, including, but not limited to the deprivation of Plaintiff's civil rights.

132.   Bulthuis has, with deliberate indifference, either failed to direct, failed to require otherwise fully, or has sought to limit the County Sheriff's Office and others in the proper supervision of Bulthuis and the investigation of the extreme and wanton acts of Bulthuis, such that it is the well-settled informal policy, practice, and customs of the County Sheriff's Office to limit internal review, supervision or

investigations, with few or no serious questions ever raised as to Bulthuis's decision to conduct illegal search and seizures. Despite knowing of this behavior and needing corrective action, Bulthuis declined to do so.

133.  By limiting or failing to properly supervise and investigate the actions of deputies, by encouraging or permitting the well-settled policy, practice, and custom  of unsupported arrest affidavits and incident reports without reasonable suspicion or probable cause to believe that these individuals were committing a serious criminal act, through well-settled policy, practice, or custom, Bulthuis has ratified, condoned, consented to Bulthuis's unlawful conduct, specifically including the unlawful conduct of Bulthuis as to Plaintiff. The ratification, condoning of, and consenting to, prior unlawful conduct of Bulthuis served as an inducement to Bulthuis to violate Plaintiff's civil rights.

134.  The above-described, well-settled customs and policies demonstrate a deliberate indifference on the part of Bulthuis, as the official policymaker of the County Sheriff's Office, to the constitutional rights of persons within the County, and were a moving force or proximate cause of violations of Plaintiff's rights. Although knowing of, or having imputed knowledge of or notice to inquire into, the unconstitutional behavior and the need to take corrective action, Bulthuis failed to do so.

135.   In the alternative, Bulthuis served as the final policymaker for the Sheriff's Office with respect to his traffic stops, searches, arrests, and preparation and filing of his incident reports and arrest affidavits, in that, even though Bulthuis and his subordinates had the power to review and overrule Bulthuis's actions, as a practical matter they never did so, but merely rubber-stamped Bulthuis's actions.

136.   As a direct and proximate result of the above violations of Plaintiff's civil and constitutional rights, Plaintiff has suffered substantial damages, including mental anguish, pain and suffering, disability, emotional distress, humiliation, embarrassment, loss of earnings, and loss of earning capacity.  The losses are permanent and/or continuing, and Plaintiff will continue to suffer such losses in the future.

137.   Plaintiff has retained the undersigned counsel to represent her in this action and has agreed to pay counsel a reasonable fee and reimburse the costs of this action.  Plaintiff is entitled to an award of attorney fees under Title 42 U.S.C. Section 1988.

**COUNT VII**
**<u>TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP</u>**
**(Against Sheriff)**

138.   Paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-70 are realleged and incorporated herein by reference.

139. This Count is brought against Sheriff (CCSO) for tortious interference with Plaintiff's business relationships with future and existing tenants and businesses. This Count is pled in the alternative, and for purposes of this Count alone, at all times pertinent hereto, Sheriff allowed its agents to act inside the course and scope of their employment with Sheriff.

140. Plaintiff had, at all times pertinent hereto, a potential business relationships with one or more prospective tenants and businesses. Sheriff knew or should have known through Defendant's agents of Plaintiff's business relationship and intentionally and unjustifiably interfered with these relationships.

141. For purposes of this Count alone, Sheriff's agents acted in accordance with what they believed to be in Sheriff's interests and/or at the direction of Sheriff.

142. Sheriff acted with an ulterior purpose and without the honest belief that their actions were justifiable.

143. Sheriff used false statements and unjustified actions described in part above to detrimentally affect Plaintiff and his future business and employment relationships.

144. The actions by Sheriff were malicious and were intended to harm Plaintiff in Plaintiff's business relationships. Defendant's actions did, in fact, harm Plaintiff's relationships with third parties. Sheriff was not a party to the business

43

relationships that have suffered and/or been destroyed by Defendant.

145. As a direct and proximate result of the actions and inactions of Sheriff described in part above, Plaintiff has incurred damages including without limitation: Plaintiff's reputation has been substantially damaged, and he has been embarrassed; Plaintiff has incurred significant emotional distress and mental pain and suffering, which is likely to continue and increase in the future.

**COUNT VIII**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**(Against Swears)**

146. Plaintiff realleges paragraphs 1-5, 9, 11, 35-38 and incorporates those allegations in this Count.

147. This Count is brought against Swears for tortious interference with Plaintiff's business relationships with future and existing tenants and businesses. This Count is pled in the alternative, and for purposes of this Count alone, at all times pertinent hereto, Swears was acting outside the course and scope of his employment with Sheriff (CCSO).

148. Plaintiff had, at all times pertinent hereto, potential and existing relationships with one or more tenants and businesses, Swears knew or should have known of Plaintiff's business relationship and intentionally and unjustifiably interfered with these relationships.

149. Swears acted with an ulterior purpose and without the honest belief

44

that his actions were justifiable.

150. Swears used false statements and unjustified actions described in part above to detrimentally affect Plaintiff and his existing and future business and tenant relationships.

151. The actions by Swears were malicious and were intended to harm Plaintiff in Plaintiff's business relationships. Defendant's actions did, in fact, harm Plaintiff's relationships with third parties. Swears was not a party to the business relationships that have suffered and/or been destroyed by Defendant.

152. As a direct and proximate result of the actions and inactions of Swears described in part above, Plaintiff has incurred damages including without limitation: Plaintiff's reputation has been substantially damaged, and he has been embarrassed; Plaintiff has incurred significant emotional distress and mental pain and suffering, which is likely to continue and increase in the future.

## COUNT IX
## <u>TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP</u>
**(Against Bulthuis)**

153. Plaintiff realleges paragraphs 1-5, 8, 11, 35-38 above and incorporates those allegations in this Count.

154. This Count is brought against Bulthuis for tortious interference with Plaintiff's business relationships with future and existing tenants and businesses. This Count is pled in the alternative, and for purposes of this Count alone, at all

times pertinent hereto, Bulthuis was acting outside the course and scope of his employment with Sheriff (CCSO).

155.  Plaintiff had, at all times pertinent hereto, potential and existing relationships with one or more tenants and businesses, Bulthuis knew or should have known of Plaintiff's business relationship and intentionally and unjustifiably interfered with these relationships.

156.  Bulthuis acted with an ulterior purpose and without the honest belief that his actions were justifiable.

157.  Bulthuis used false statements and unjustified actions described in part above to detrimentally affect Plaintiff and his existing and future business and tenant relationships.

158.  The actions by Bulthuis were malicious and were intended to harm Plaintiff in Plaintiff's business relationships. Defendant's actions did, in fact, harm Plaintiff's relationships with third parties. Bulthuis was not a party to the business relationships that have suffered and/or been destroyed by Defendant.

159.  As a direct and proximate result of the actions and inactions of Bulthuis described in part above, Plaintiff has incurred damages including, without limitation: Plaintiff's reputation has been substantially damaged, and he has been embarrassed; Plaintiff has incurred significant emotional distress and mental pain

and suffering, which is likely to continue and increase in the future.

## COUNT X
## <u>CIVIL CONSPIRACY TO TORTIOUSLY INTERFERE</u>
## <u>WITH A BUSINESS RELATIONSHIP</u>
### (Against Bulthuis)

160. Plaintiff realleges paragraphs 1-5, 8-11, 35-38 above and incorporates those allegations in this Count. For the purposes of this Count alone, Bulthuis was acting outside the course and scope of his employment with Defendant Sheriff.

161. Bulthuis acted in concert to commit an unlawful act, or…a lawful act by unlawful means, to wit civil conspiracy to as set forth more fully above.

162. Bulthuis formed an agreement to inflict a wrong against or injury upon Plaintiff and took an overt act that resulted in damage.

163. Plaintiff has sufficiently pled a prima facia case of civil conspiracy and thereby a prima facia case of Civil Conspiracy to commit said tortious activity.

164. Alternatively, Bulthuis participated in the conspiracy and possessed, by virtue of his combination with another conspirator, a peculiar power of coercion over Plaintiff, which power said Bulthuis could not possess if not for the conspiracy.

165. Bulthuis agreed or conspired expressly or by implication with the goal of unlawfully or lawfully but in an unlawful manner conspiring against Plaintiff.

166. Bulthuis performed an overt act in pursuance of this goal by some

overt act, and as a direct and proximate result of said conspiracy and acts committed in pursuance thereto, the individually named Defendant damaged Plaintiff.

167. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment, and good standing in the community; he has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of the individually named Defendant's actions, and is therefore entitled to compensatory damages pursuant to the above provisions. Plaintiff's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future. Plaintiff is entitled to punitive damages under this Count.

## COUNT XI
### CIVIL CONSPIRACY TO TORTIOUSLY INTERFERE WITH A BUSINESS RELATIONSHIP
(Against Swears)

168. Plaintiff realleges paragraphs 1-5, 8-11, 35-38 above and incorporates those allegations in this Count. For the purposes of this Count alone, Swears was acting outside the course and scope of his employment with Defendant Sheriff.

169. Swears acted in concert to commit an unlawful act, or…a lawful act by unlawful means, to wit civil conspiracy to as set forth more fully above.

48

170.   Swears formed an agreement to inflict a wrong against or injury upon Plaintiff and took an overt act that resulted in damage.

171.   Plaintiff has sufficiently pled a prima facia case of civil conspiracy and thereby a prima facia case of Civil Conspiracy to commit said tortious activity.

172.   Alternatively, Swears participated in the conspiracy and possessed, by virtue of his combination with another conspirator, a peculiar power of coercion over Plaintiff, which power said Swears could not possess if not for the conspiracy.

173.   Swears agreed or conspired, expressly or by implication, with the goal of unlawfully or lawfully but in an unlawful manner conspiring against Plaintiff.

174.   Swears performed an overt act in pursuance of this goal by some overt act, and as a direct and proximate result of said conspiracy and acts committed in pursuance thereto, the individually named Defendant damaged Plaintiff.

175.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment, and good standing in the community; he has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of the individually named Defendant's actions, and is therefore entitled to compensatory damages pursuant to the above

provisions. Plaintiff's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future. Plaintiff is entitled to punitive damages under this Count.

## COUNT XII
## CIVIL CONSPIRACY
### (Against Hall's)

176.    Plaintiff realleges paragraphs 1-5, 8-11, 35-38 above and incorporates those allegations in this Count.

177.    Hall's acted in concert to commit an unlawful act, or…a lawful act by unlawful means, to wit civil conspiracy to as set forth more fully above.

178.    Swears and Bulthuis formed an agreement with Hall's to inflict a wrong against or injury upon Plaintiff and took an overt act that resulted in damage.

179.    Plaintiff has sufficiently pled a prima facia case of civil conspiracy and thereby a prima facia case of Civil Conspiracy to commit said tortious activity.

180.    Alternatively, Defendant participated in the conspiracy and possesses, by virtue of its combination with another conspirator, a peculiar power of coercion over Plaintiff, which power said Swears, Bulthuis and Hall's could not possess if not for the conspiracy.

181.    Hall's agreed or conspired, expressly or by implication, with the goal of unlawfully or lawfully but in an unlawful manner conspiring against Plaintiff.

182.    Hall's performed an overt act in pursuance of this goal by some overt

50

act, and as a direct and proximate result of said conspiracy and acts committed in pursuance thereto, this Defendant damaged Plaintiff.

183. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment, and good standing in the community; he has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of the individually named Defendant's actions, and is therefore entitled to compensatory damages pursuant to the above provisions. Plaintiff's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future. Plaintiff is entitled to punitive damages under this Count.

## COUNT XIII
## SUPERVISORY LIABILITY FOR FAILURE TO CORRECT
## FALSE ARREST UNDER 42 U.S.C. §1983
### (Against Sheriff)

184. Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

185. Sheriff's agents violated Plaintiff's Constitutional rights to be free from an illegal restraint of his liberty.

186. At all relevant times, Sheriff served as the supervisor of all agents

51

employed with CCSO.

187.   During Defendant Mark Hunter's tenure as Sheriff of Columbia County, a history of widespread abuse within the Columbia County Sheriff's Office occurred as to the exercise of improper and unjustified illegal arrests, which was obvious, flagrant, rampant, and of continued duration. This included the policy or custom of the Sheriff's Office of eliciting arrests based upon false grounds.

188.   Numerous incidents involving facts that clearly indicate that arrests have been made on false and unfounded grounds have put Sheriff on notice of the need to take corrective action.

189.   Prior incidents, as well as the above-described history of widespread abuse, Plaintiff also put Sheriff on notice that Deputies were likely to violate citizens' rights to be free from restraint and denied their liberty based upon false grounds.

190.   Despite having such notice, Sheriff took no remedial or corrective action. Sheriff was the final policymaker. Sheriff is a person under applicable law.

191.   As a direct and proximate cause of Sheriff's actions, Plaintiff has been damaged, which damages include: mental anguish, pain, and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation. These damages have occurred at present, in the past, and will

52

most likely occur in the future. Plaintiff is entitled to punitive damages under this Count.

## COUNT XIV
## COMMON LAW ABUSE OF PROCESS
### (Against Sheriff)

192.   Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

193.   This is an action against Sheriff (CCSO) for abuse of process.

194.   Sheriff repeatedly used frivolous or false petitions and participated in the making of complaints to law enforcement agencies.

195.   Sheriff exerted pressure on the State Attorney's Office in illegal, improper, or perverted use of process; did have an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and did cause grievous harm and damage to Plaintiff as a result of their actions.

196.   In order to stop Plaintiff in his attempt to conduct business and to make complaints about the Sheriff, the Sheriff caused multiple documents including false charges to be filed against Plaintiff and maintained those cases despite the knowledge that there was no factual basis therefore. Defendant Sheriff caused at probable cause affidavits to be issued against Plaintiff, failed to have them and/or warrants withdrawn despite his knowledge, and continued to attempt to prosecute him on concocted charges for improper gain.

197.    As a direct and proximate result of the actions taken by Defendant Sheriff, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will occur in the future.

**COUNT XV**
**COMMON LAW ABUSE OF PROCESS**
**(Against City)**

198.    Plaintiff realleges paragraphs 1-6, 11, 12, 21, 23, 24, 27-32, 39, 49, 53, 60, 64, and 66-70 above and incorporates those allegations in this Count.

199.    This is an action against Defendant Lake City (LCPD), for abuse of process.

200.    LCPD repeatedly used frivolous or false petitions and participated in the making of complaints to law enforcement agencies.

201.    LCPD exerted pressure on the State Attorney's Office in illegal, improper, or perverted use of process; did have an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and did cause grievous harm and damage to Plaintiff as a result of their actions.

202.    In order to stop Plaintiff in his attempt to conduct business and to make complaints about the LCPD, it caused multiple documents including false charges to be filed against Plaintiff and maintained those cases despite the

54

knowledge that there was no factual basis therefore. Defendant Lake City caused at probable cause affidavits to be issued against Plaintiff, failed to have them and/or warrants withdrawn despite its knowledge, and continued to attempt to prosecute him on concocted charges for improper gain.

203.   As a direct and proximate result of the actions taken by City, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will occur in the future.

## COUNT XVI
## COMMON LAW NEGLIGENCE
### (Against Sheriff)

204.   Plaintiff realleges paragraphs 1-5, 7-9, 1-20, 22, 25, 26, 32-48, 50-59, 61-63, and 65-69 above and incorporates those allegations in this Count.

205.   This Count sets forth a claim against Sheriff (CCSO) for common law negligence. Sheriff knew or should have known that Plaintiff was in a zone of risk related to contact with its agents/employees.

206.   Sheriff owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Sheriff and/or Sheriff had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Sheriff because Plaintiff was in the foreseeable zone of risk of being harmed by the actions thereof.

207.   Sheriff further breached its duty to properly enforce the laws and City Codes, which it failed to do specifically for Plaintiff after knowledge of his plight described in part above.

208.   The actions of Sheriff and complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

209.   As a direct and proximate result of the unlawful acts and omissions of Sheriff set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

**COUNT XVII**
**<u>COMMON LAW NEGLIGENCE</u>**
**(Against City)**

210.   Plaintiff realleges paragraphs 1-6, 11, 12, 21, 23, 24, 27-32, 39, 49, 53, 60, 64, and 66-69 above and incorporates those allegations in this Count.

211.   This Count sets forth a claim against City (LCPD) for common law negligence. City knew or should have known that Plaintiff was in a zone of risk

related to contact with its agents/employees.

212. City owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and City, and/or City had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon City because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

213. City further breached its duty to properly enforce the laws and City Codes, which it failed to do specifically for Plaintiff after knowledge of his plight described in part above.

214. The actions of City and  complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

215. As a direct and proximate result of the unlawful acts and omissions of City set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to

continue into the future.

## COUNT XVIII
## NEGLIGENT RETENTION
### (Against Sheriff)

216.   Plaintiff realleges paragraphs 1-5, 8-10, 35-38 above and incorporates those allegations in this Count.

217.   This Count is pled in the alternative.

218.   This Count sets forth a claim against Sheriff (CCSO) for negligent retention.

219.   Sheriff breached its duty to properly discipline Defendants Bulthuis and Swears and other deputies, employees, and agents and negligently kept Defendants Bulthuis and Swears and others on staff. Sheriff failed to administer discipline up to and including termination where it was warranted, and Plaintiff was in the foreseeable zone of risk attached thereto.

220.   Defendant's lack of a policy or lack of proper implementation thereof regarding employee's behavior and appropriate disciplinary actions, therefore, allowed Defendants Bulthuis and Swears, and others to retain employees even after the conduct described more fully above.

221.   The breach of this duty to properly discipline/ terminate Defendant Defendants Bulthuis and Swears and other deputies, employees, and agents resulted in damages and injury to Plaintiff. Sheriff knew or should have known

that the actions, omissions, and derelictions of deputies, employees, and agents, when left unchecked, could cause injury to Plaintiff.

222. As a direct and proximate result of the unlawful acts and omissions of Sheriff outlined in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## COUNT XIX
## FIRST AMENDMENT RETALIATION
## FOR VIOLATIONS OF FREEDOM OF SPEECH/ EXPRESSION
### (Against Sheriff)

223. Plaintiff realleges paragraphs 1-5, 7, 11, 25, 32-48, 50-59, 61-63, and 65-70 above and incorporates those allegations in this Count.

224. This Count sets forth a claim against Sheriff (CCSO) for violation of Plaintiff's First Amendment rights of speech/ expression, brought through 42 U.S.C. §1983. Plaintiff engaged in constitutionally protected speech by making statements about Defendant and reporting matters of public concern. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above. A defendant is a person under the laws applicable to this

59

action.

225.   After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. Defendant infringed on Plaintiff's constitutionally protected interest in freedom of expression, in part, by intimidating and ejecting Plaintiff in retaliation. The actions complained of herein were taken by or at the direction of limitation Sheriff and others acting on behalf of Sheriff, who are each policymakers within Defendant. Further, Sheriff, through its agents and employees, engaged in a custom and practice of unconstitutionally retaliating against employees who speak out on matters of public concern.

226.   Sheriff's actions, through its employees and agents, of ejecting him from a public meeting and later harassing him is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his First Amendment right to speak/express. The actions of Sheriff were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of his First Amendment speech/expression rights. The actions and inactions of Sheriff were taken under color of law with the intent to harm Plaintiff.

227.   As a direct and proximate result of the unlawful acts and omissions of Sheriff set forth in part above, Plaintiff has been damaged, which damages include

physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## COUNT XIX
## CIVIL CONSPIRACY
### (Against Sheriff)

228. Plaintiff realleges paragraphs 1-6, 11, 12, 21, 23, 24, 27-32, 39, 49, 53, 60, 64, and 66-70 above and incorporates those allegations in this Count.

229. Sheriff acted in concert to commit an unlawful act or a lawful act by unlawful means. Defendant acted as conspirators to damage Plaintiff by, for example, denying Plaintiff his property rights and to fix his property damage. Defendant acted in concert to file false charges against Plaintiff, which caused Plaintiff to suffer irreparable damage to his career.

230. Defendant Sheriff conspired with Bulthuis and Swears, while acting outside the course and scope of their employment with Defendant, and Hall's to commit the acts described in part above.

231. Thus, the underlying torts which formed the purpose of the conspiracy include but are not limited to malicious prosecution, abuse of process, fraud, defamation, misrepresentation, breach of fiduciary duty, bad faith breach of

61

contract, and tortious interference. Defendant also acted to deprive Plaintiff of his due process rights under the Fourteenth Amendment, United States Constitution.

232.  Alternatively, Defendant is liable for the tort of civil conspiracy standing alone based upon the exceptional circumstances surrounding the facts of this case which have led to the instant causes of action.

233.  The conspiracy between the individually named Defendants, Hall's and Sheriff was a conspiracy to commit unlawful acts by unlawful means in January 2022.

234.  Defendant engaged in overt acts in furtherance of the conspiracy.

235.  Plaintiff has been damaged as a result of the conspiracy.

236.  Defendant formed an agreement to inflict a wrong against or injury upon Plaintiff and took an overt act that resulted in damage.

237.  Plaintiff has sufficiently pled a prima facia case of due process and other violations and, thereby, a prima facia case of Civil Conspiracy to commit acts in furtherance of the conspiracy.

238.  Alternatively, Defendant participated in the conspiracy and possessed, by virtue of his combination with the other conspirators, a peculiar power of coercion over Plaintiff, which power said Defendant could not possess if not for the conspiracy.

239.  Two or more of the individually named Defendants agreed or conspired, expressly or by implication, with the goal of unlawfully or lawfully but unlawfully depriving Plaintiff of his constitutionally protected rights and due process of law (see, e.g., Fla. Stat §713.001).

240.  One or more members of this conspiracy performed an overt act in pursuance of this goal by some overt act, and as a direct and proximate result of said conspiracy and acts committed in pursuance thereto, the individually named Defendant damaged Plaintiff.

241.  As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment, and good standing in the community; he has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of the individually named Defendant's actions, and is therefore entitled to compensatory damages pursuant to the above provisions. Plaintiff's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future.

**COUNT XX**
**TRESPASS TO CHATTEL AND CONVERSION**
(Against Hall's)

242.  Plaintiff realleges paragraphs 1- 5, 10, 11, 35-38 above and incorporates those allegations in this Count.

243.  Plaintiff is entitled to relief against Hall's that it intentionally and without cause used "self-help" in taking property it sold to Plaintiff and had been already installed (and thus "attached") to Plaintiff's tenant's home. By causing Plaintiff significant financial hardship and making his property unusable, Hall's deliberately caused interference with his ownership and control and, moreover, showed full intention to intermeddle between Plaintiff and his property.

244.  The actions by Hall's were malicious and were intended to harm Plaintiff, as further evidenced by Hall's use of the government's police force in effectuating said taking.

245.  These actions of the Hall's were done intentionally and deliberately and in the absence of any just cause or reason – having provided only an "invoice" to the police; however, it should have been patently obvious to anyone that and invoice is only a bill – not something showing that Hall's either had a right to possess the property or that it was not paid for by Plaintiff.

246.  As a direct and proximate result of the unlawful acts and omissions of Hall's set forth in part above, Plaintiff has been damaged, which damages include

physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## COUNT XXI
## TRESPASS TO CHATTEL AND CONVERSION
### (Against Bulthuis)

247.   Plaintiff realleges paragraphs 1-5, 9, 11, 35-38 above and incorporates those allegations in this Count.

248.   Plaintiffs are entitled to relief against Bulthuis in that he intentionally and without cause assisted in Hall's taking Plaintiff's chattel and provided what essentially amounts to a private security service for Hall's while taking Plaintiff's property. The "civil stand by" was done with an undue preference towards Hall's; when Plaintiff and his tenant demanded that Hall's leave the premises, Swears acted on the direction of Bulthuis and ignored them and permitted Hall's to remove Plaintiff's property illegally. Thus, Bulthuis deliberately caused interference with his ownership and control and, moreover, showed full intention to intermeddle between Plaintiff and his property.

249.   The actions by Bulthuis were malicious and were intended to harm Plaintiff, as demonstrated by the fact that Bulthuis' wife and stepson worked for

Hall's and thus Hall's was given undue preference over Plaintiff and his tenant who objected to the taking – and in response threatened Plaintiff with arrest. Moreover, Bulthuis acted with preference given to his spouse, having worked for Hall's and having provided only an "invoice" to the police; however, it should have been patently obvious to anyone that an invoice is only a bill – not something showing that Hall's either had a right to possess the property or that it was not paid for by Plaintiff.

250.   Bulthuis's actions were intentional and deliberate and in the absence of any just cause or reason.

251.   As a direct and proximate result of the unlawful acts and omissions of Bulthuis outlined in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

**COUNT XXI**
**<u>TRESPASS TO CHATTEL AND CONVERSION</u>**
**(Against Swears)**

252.   Plaintiff realleges paragraphs 1-5, 9, 11, 35-38 above and incorporates those allegations in this Count.

66

253. Plaintiffs are entitled to relief against Swears in that he intentionally and without cause assisted in Hall's taking Plaintiff's chattel and provided what essentially amounts to a private security service for Hall's while taking Plaintiff's property. The "civil stand by" was done with an undue preference towards Hall's; when Plaintiff and his tenant demanded that Hall's leave the premises, Swears ignored them and permitted Hall's to remove Plaintiff's property illegally. Thus, Swears deliberately caused interference with his ownership and control and, moreover, showed full intention to intermeddle between Plaintiff and his property.

254. The actions by Swears were malicious and were intended to harm Plaintiff.

255. These actions of Swears were done intentionally and deliberately and in the absence of any just cause or reason, as demonstrated by the unnecessarily slanderous remarks Swears made towards Plaintiff's tenant and threatened Plaintiff with arrest.

256. Moreover, Sears acted against Plaintiff with Hall's having provided only an "invoice" to the police; however, it should have been patently obvious to anyone that an invoice is only a bill – not something showing that Hall's either had a right to possess the property or that it was not paid for by Plaintiff.

257. As a direct and proximate result of the unlawful acts and omissions of Swears set forth in part above, Plaintiff has been damaged, which damages include

physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a)     that process issue and this Court takes jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendants and for Plaintiff temporarily and permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e)     enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f)    grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Dated this **June 16, 2023**.

Respectfully submitted,

**/s/ Marie A. Mattox**
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801

**ATTORNEYS FOR PLAINTIFF**