UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEREK SNEAD,

    Plaintiff,

v.                                                 CASE NO. 3:23-cv-713-WWB-MCR

CITY OF LAKE CITY, FLORIDA,
et al.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant's Motion to Compel Plaintiff's Discovery Responses ("Motion") (Doc. 74). For the reasons that follow, the Motion is due to be **GRANTED.**

**I.    Background**

On June 16, 2023, Plaintiff Derek Snead ("Plaintiff") filed his Complaint with this Court. (Doc. 1.) With leave, Plaintiff filed an Amended Complaint on August 17, 2023. (Doc. 27.) Defendants Sheriff Mark Hunter, Aaron Swears, and Howard Bulthuis (collectively, hereinafter, "Defendants") answered Plaintiff's First Amended Complaint on October 20, 2023. (Doc. 46.) Later, Defendants filed a Motion for Leave to Amend Answer and Affirmative Defenses, which this Court granted, and Plaintiff sought leave to file a Second

Amended Complaint, which this Court denied. (Docs. 50, 58, 80.) Thus, the operative Complaint in this case is Plaintiff's First Amended Complaint, and the operative Answer is Defendants' Amended Answer and Affirmative Defenses. (Docs. 27, 50.)

On July 10, 2024, Defendants filed the present Motion. (Doc. 74.) Therein, Defendants request that this Court compel Plaintiff to respond to (1) Defendant Sheriff Mark Hunter's ("Defendant Sheriff") third set of interrogatories and to (2) Defendants' request for production related to Facebook. (Doc. 74 at 2.)

### A. Defendant Sheriff's Interrogatories

Defendant Sheriff served Plaintiff with his first set of interrogatories, totaling twelve, on October 27, 2023. (Doc. 75-3.) Defendant Sheriff served Plaintiff with his second set of interrogatories, totaling six, on December 20, 2023. (Doc. 75-4.) Plaintiff did not object to the representations made by Defendant regarding the total number of interrogatories in either instance. (Doc. 74 at 2-3.) When Defendant Sheriff served Plaintiff with his third set of interrogatories on June 5, 2024, Plaintiff objected—stating that Defendant Sheriff exceed his limit of 25 interrogatories. (Docs. 75-1, 75-2.)

In its Response, Plaintiff argues that he was not required to object until Defendant exceeded the limit of 25 interrogatories, which did not occur until

2

June 2024. (Doc. 75 at 4.) Thus, Plaintiff contends that his objection is timely and should be sustained. (*Id.*)

B. Defendants' Request for Production

On June 5, 2024, Defendants served their Facebook Request for Production on Plaintiff. (Doc. 75-5.) The Request for Production seeks:

> The complete history/file of all of your Facebook accounts, including accounts for all aliases, callsigns, monikers, handles, avatars, or the like, from January 1, 2018 to the present. Such aliases, callsigns, monikers, handles, avatars, or the like include, but are not limited to: Derek Snead, Larry Snead, Lawrence Snead, Barry Gable, Dora Douglas, Dorothy Erwin, Jeniffer Clayton, and Davinny Costanza. (Please see attached for instructions).

(Doc. 74-5.) After receiving an extension, Plaintiff was required to produce the requested items by noon on July 10, 2024. (Doc. 74 at 6.) However, instead of producing, Plaintiff objected to the Request for Production at 8:22 PM on July 10, 2024—about eight hours after the deadline to produce passed. (Doc. 75-6.) Plaintiff contends that "even if the objection was about 8 hours late and Defendants only provided an extension to produce the documents, then Plaintiff's objections should still be sustained." (Doc. 75 at 4 (underline original).) Plaintiff objects on the grounds that Defendants' Request for Production is "incredibly intrusive." (Doc. 75 at 4.)

**II.   Standard**

A. Calculating Interrogatories

Rule 33(a) provides that "[u]nless otherwise stipulated or ordered by

3

the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). To determine if subparts of an interrogatory are discrete, courts use the related question test. *Erenler v. TJM Properties, Inc.*, No. 8:21-CV-0671-SDM-SPF, 2022 WL 18492699, at *2 (M.D. Fla. Nov. 7, 2022) (citing *Freeman v. Motorola Sols., Inc.*, No. 6-19-cv-2116-Orl-78GJK, 2020 WL 10319159, at *9 (Oct. 7, 2020)). This test asks "whether the particular subparts are logically or factually subsumed within and necessarily related to the primary question." *Id.* (internal citations omitted). If a subpart is subsumed and necessarily related to the primary question, then the subpart is not "discrete" within the meaning of Rule 33(a). *Id.* (citing *Williams v. Taser Int'l, Inc.*, No. 106-cv-51-RWS, 2007 WL 1630875, at *2 (N.D. Ga. June 4, 2007)).

### B. Waiving Objections

Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure. *See Treminio v. Crowley Mar. Corp.*, No. 322CV00174CRKPDB, 2023 WL 8615135 (M.D. Fla. Dec. 13, 2023) (citations omitted); M.D. Fla. Civil Discovery Handbook (2021) at §§ III.A.6., IV.B.1 ("Absent compelling circumstances, failure to assert an objection to a request for production [or interrogatory] within the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel.").

4

Factors courts have considered in determining whether good cause exists to accept out of time objections include: "(1) the length of the delay or failure to particularize; (2) the reason for the delay or failure to particularize; (3) whether there was any dilatory or bad faith action on the part of the party that failed to raise the objection properly; (4) whether the party seeking discovery has been prejudiced by the failure; (5) whether the document production request was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party." *Bailey v. City of Daytona Beach Shores*, 286 F.R.D. 625, 627 (M.D. Fla. 2012) (citations omitted).

### III. Analysis

In light of the foregoing standards governing interrogatories and waiver, as discussed in turn below, this Court finds that Defendants' Motion is due to be **GRANTED**.  (Doc. 74.)

#### A. Defendant Sheriff's Interrogatories

Defendant Sheriff is allowed 25 interrogatories.  *See* Fed. R. Civ. P. 33(a)(1).  Upon applying the "related question" test, *i.e.*, whether the subparts of each interrogatory are "logically or factually subsumed within and necessarily related to the primary question" test, this Court finds that Defendant Sheriff has not exceeded that limit, as illustrated below.  *See Erenler*, 2022 WL 18492699, at *2.  Thus, Plaintiff's objection is overruled.

i. *First Set: October 27, 2023 Interrogatories*

Defendant Sheriff identifies twelve questions, and this Court agrees with that representation despite the questions' subparts. (Doc. 74-3.)

First, Defendant Sheriff asks for Plaintiff's basic biographical information and identifies the specifically sought components of such. (Doc. 74-3.) Then, in questions two through nine, Defendant Sheriff asks for details regarding "each and every instance of [Plaintiff's] false arrest," "each and every instance of abuse of process," "each and every instance of malicious prosecution," "each and every instance of a violation of [Plaintiff's] 14th Amendment Due Process rights," "each and every instance of tortious interference with a business relationship," "each and every instance of retaliation in violation of [Plaintiff's] 1st Amendment right to freedom of speech/expression," "each and every unlawful act or lawful act by unlawful means" allegedly committed by Defendant Sheriff, and any instances of alleged trespass or non-access to property. (Doc. 74-3 at 2-9.) In each question, various subparts seeking specific dates, circumstances, witnesses, and documents pertaining to each allegation.

In question ten, Defendant Sheriff asks for "all social media or social networking sites/providers with which [Plaintiff has] held an account at any time since January 1, 2018," and specifies through subparts that he seeks the

name of the site, internet address, associate username and e-mail, and open/close dates. (Doc. 74-3 at 10.)

In question eleven, Defendant Sheriff asks for Plaintiff to "identify and describe all civil lawsuits or claims filed with any judicial or administrative agency in which you have been a party or witness," requesting that Plaintiff relay the case number, nature and style, disposition, and relevant dates of such. (Doc. 74-3 at 11.)

In question twelve, Defendant Sheriff asks about Plaintiff's past crimes, specifically whether Plaintiff has ever been convicted of a crime punishable by death or imprisonment greater than one year, or of a crime that involved dishonesty or a false statement. (Doc. 74-3 at 12.) If so, Defendant Sheriff asks for the date, place, and crime of each conviction. (*Id.*)

Given that any subpart to the twelve questions factually and logically relate back to the primary question, this Court does not find that any subparts are separate, discrete questions for purposes of calculating interrogatories. *See Erenler*, 2022 WL 18492699, at *2. Thus, Defendant Sheriff's first set of inquiries constitutes twelve in total.

ii. *Second Set: December 20, 2023 Interrogatories*

Herein, Plaintiff identifies six interrogatories, and this Court agrees with that number. (Doc. 74-4 at 1-6.) First, Defendant Sheriff asks for specific examples describing "the precise nature and impact of [Plaintiff's]

7

alleged emotional distress and/or mental pain and suffering resulting from the alleged actions of [Defendant Sheriff], as set forth in the Complaint." (Doc. 74-4 at 1.)  Second, Defendant Sheriff asks for the contact information of any professionals that Plaintiff saw "in relation to any of the [identified] injuries" and the "reason for such consultation." (*Id.* at 2.)  Third, Defendant Sheriff asks for the contact information of any professionals that Plaintiff has seen over the last seven years and the reason for such a consultation. (*Id.* at 3.)  This Court does not find that these questions imbed discrete inquiries.

Questions four through six include subparts. (Doc. 74-4 at 4–6.) Question four solicits details about "each and every piece of real property implicated in the Complaint in which [Plaintiff has] or had a property interest." (*Id.* at 4.)  Question five asks about "each and every arrangement for [Plaintiff's] rental/lease, to another person or entity, of a piece of property implicated in the Complaint, within the period of January 1, 2015, to now." (*Id.* at 5.)  Question six asks about Plaintiff's "income and expenses, from calendar year 2015 to now, for each and every piece of real property implicated in the Complaint." (*Id.* at 6.)

Despite these questions containing four subparts each, those components are each logically and factually relate back to the primary question regarding property-related details. (Doc. 74-4 at 4–6.)  Thus, the nature and relationship of each question and any subpart thereto compels

8

this Court to agree with Plaintiff's representation that this batch of interrogatories contains six questions.

### iii. *Third Set: June 5, 2024 Interrogatories*

In his third set, Defendant Sheriff represents six questions in total, and this Court agrees with that calculation.

Defendant Sheriff's first question asks about Lori Fuller and contains seven subparts. (Doc. 74-1 at 2.) Those subparts request further information about Plaintiff's relationship with Lori Fuller, as well as her general contacts and correspondence. (*Id.*) Defendant Sheriff's second question asks about Lori Fuller's particular involvement or knowledge about the events and circumstances underlying Plaintiff's complaint and contains three subparts. (Doc. 74-1 at 3.) Those subparts seek information about the incidents in which Lori Fuller was involved in, statements about the incidents she may be privy to, and the properties or trusts owned by Plaintiff which she has any connection with. (*Id.*)

In question three, Defendant Sheriff asks about Shelly Livingston. (Doc. 74-1 at 4.) Therein, Defendant Sheriff asks the same seven subparts that he asked about Lori Fuller in question one. (*Id.*) The same is true for Defendant Sheriff's question four, in which he asks the same questions about Shelly Livingston as he did about Lori Fuller in question two. (*Id.*)

9

The same follows for Tracy Snead in questions five and six, which match questions one and three about Lori Fuller, and questions two and four about Shelly Livingston, respectively.

This set of interrogatories contains three sets of the same two questions about three different individuals, totaling six questions. Although the questions contain subparts, each subpart logically and factually relates back to the primary question. Therefore, Defendant Sheriff's third set of interrogatories comprises six questions in total.

### B. Defendants' Request for Production

Plaintiff concedes that his objection to Defendants' request for production was late but states that good cause exists for the delay. (Doc. 75 at 5.) Plaintiff argues "good cause [exists] to excuse Plaintiff's slightly belated (*i.e.*, by 8 hours and 22 minutes) objection because of the absolute ridiculous, unbridled request for every cent of Plaintiff's Facebook data spanning over 6 years," and because Plaintiff's counsel was out of office the day that Plaintiff's production was due. (Doc. 75 at 5, n.1.) However, this Court disagrees that such reasons substantiate good cause.

Notably, Plaintiff's objection was late by five days, not eight hours. (Doc. 74 at 6.) The documents were due July 5, 2024, with an extension to produce—not object—until noon on July 10, 2024, yet Plaintiff responded with an objection on July 10, 2024, just past 8:00 PM. (Doc. 74 at 6; Doc. 75

10

at 5.)  Plaintiff fails to convince this Court what caused his 35+ day delay in objecting to Defendants' Request for Production.  Plaintiff had ample opportunity to object anytime after June 5, 2024, when he was served with the, now argued, "absolute ridiculous, unbridled" Request for Production. (Doc. 74 at 6; Doc. 75 at 5.)  Yet, Plaintiff did not respond at all until July 8, 2024, when he requested an extension.  (Doc. 74 at 6.)  Thus, Plaintiff has not shown good cause for this delay, and Plaintiff's objection has been waived.

Accordingly, it is **ORDERED**:

1. The Motion (**Doc. 74**) is **GRANTED**.  **On or before September 19, 2024**, Plaintiff shall: (1) provide answers to Defendant Sheriff's Third Set of Interrogatories; and (2) produce documents responsive to Defendants' Request for Production related to Facebook.  Failure to comply with this Order may result in the imposition of sanctions as provided in Fed. R. Civ. P. 37(b).

2. **On or before September 23, 2024**, Plaintiff shall **SHOW CAUSE** in writing why Plaintiff and/or their counsel should not be ordered to pay Defendants' reasonable expenses, including attorney's fees, incurred in bringing the Motion.  *See* Fed. R. Civ. P. 37(a)(5)(A).

11

**DONE AND ORDERED** at Jacksonville, Florida, on September 9, 2024.

*[signature]*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record