UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEREK SNEAD,

        Plaintiff,

v.                                    CASE NO. 3:23-cv-713-WWB-MCR

CITY OF LAKE CITY, FLORIDA,
et al.,

        Defendants.

_____/

## MOTION FOR SUMMARY JUDGMENT
## BY DEFENDANT SHERIFF HUNTER

Pursuant to Fed.R.Civ.P. 56 and Local Rule 3.01, Defendant, MARK HUNTER,

in his official capacity as Sheriff of Columbia County ("Sheriff"), moves for summary

judgment on all claims and states:

1.      Plaintiff, DEREK SNEAD ("Plaintiff" or "Snead") filed suit against the

Sheriff for alleged misconduct associated with the investigations, arrests, and other

actions of the Columbia County Sheriff's Office (CCSO) taken in response to Plaintiff's

criminal business dealings and other matters. These allegations span approximately

three years, and cover 19 incidents.

2.      Pending against the Sheriff are the following claims [Doc.27]:

| Count | Claim for Relief |
|-------|------------------|
| I | §1983 Fourth Amendment False Arrest |
| II | Common Law False Arrest |
| V | §1983 Fourteenth Amendment Procedural & Substantive Due Process |
| VI | §1983 Malicious Prosecution |
| IX | Tortious Interference with a Business Relationship |
| XI | Common Law Abuse of Process |
| XIII | Negligent Supervision and Retention |

| | |
|---|---|
| XIV | First Amendment Retaliation for Freedom of Speech |
| XVI | Common Law Civil Conspiracy |
| XVII | §1983 Civil Conspiracy |

3.     The pleadings, affidavits, and other evidence of record demonstrate that there is no genuine issue as to any material fact.

4.     Plaintiff fails to prove the elements of his claims and the Sheriff is entitled to summary judgment as a matter of law.

WHEREFORE, Sheriff Hunter respectfully requests the entry of final summary judgment in his favor on all claims.

## STATEMENT OF FACTS

Timely incidents complained of by Plaintiff are set forth below in date order. [Doc.27]. For easy reference, they are numbered and briefly described.

| Incident Number | Date of Incident | Brief Description |
|---|---|---|
| 1. | 05.25.20 | Arrest on Capias for Fraud/Forgery of Quitclaim Deed |
| 2. | 06.17.20 | PC Affidavit for Fraudulent Sales to Multiple Purchasers (Misty Cooper) |
| 3. | 03.17.21 | Arrest on Capias for Burglary/Jewelry Theft from Tenant Herndon |
| 4. | 11.21.21 | Arrest by Lake City Police Department |
| 5. | 11.28.21 | Meeting with Plaintiff Regarding Civil Complaint |
| 6. | 12.04.21 | Remarks by CCSO Deputy Lucas |
| 7. | 01.14.22 | Exclusion from Courthouse by CCSO Deputy Stalnaker |
| 8. | 04.01.22 | Arrest on a Warrant, Added Charge of Resisting Officer without Violence |
| 9. | 06.20.22 | Snead Report of Stolen Trailer |
| 10. | 06.24.22 | Detention On a Capias for Theft from Tenant Flowers' Tool Shed |
| 11. | 07.27.22 | Martinez Report of Fraud in Sale of Property |
| 12. | Unknown | County Commission Meeting |
| 13. | 12.02.22 | Report of Battery by Tenant Brewington |
| 14. | 01.07.23 | Snead Complaint Regarding Squatters |
| 15. | 02.17.23 | Trespass Warning for Property of Bowser |
| 16. | 04.2023 | Closure of TD Bank Accounts |
| 17. | 05.08.23 | PC Affidavit for Criminal Mischief of Neighbor's Fence/Gate |

| Incident Number | Date of Incident | Brief Description |
|---|---|---|
| 18. | 06.15.23 | Arrest on PC for Theft/Stalking of Tenant Ham |
| 19. | 06.15.23 | Arrest on PC for Burglary, Stalking et al of Tenant Morris |

### 1. 05.25.20 ARREST ON CAPIAS FOR FRAUD & FORGERY OF QUITCLAIM DEED

In May 2020, CCSO Deputy Kernan signed a probable cause affidavit for multiple charges of fraud and forgery against Derek Snead based on an investigation and sworn statements of David Moore and a notary reflecting that a quitclaim deed filed in the official records which conveyed Moore's property to Snead was fraudulent. [Doc. 90-12A-12E; 90-13C-D]. On May 15, 2020, the State Attorney issued an Information charging Snead and seeking a capias for Snead's arrest. [Doc. 90-13A]. On May 25, 2020, Snead was arrested on the capias by CCSO Deputy Bedenbaugh. [Doc. 90-13B]. In November 2020, all three charges were nolle prossed. [Doc. 90-12F].

### 2. 06.17.20 PC AFFIDAVIT FOR FRAUDULENT SALES TO MULTIPLE PURCHASERS

On June 17, 2020, following investigation, CCSO Detective DaSilva submitted a probable cause affidavit to believe that Snead committed the crimes of Burglary and Larceny when he entered Misty Cooper's 1711 NW Turner Avenue residence through a window and took her locks. [Doc. 90-11Q; Doc. 90-12G-H]. No prosecution by the State Attorney's Office was ever initiated on the matter and Snead was never detained or arrested. [Doc. 90-2, pp.322-333].

### 3. 03.17.21 ARREST ON CAPIAS FOR BURGLARY & JEWELRY THEFT FROM TENANT HERNDON

In October 2020, following investigation, CCSO Deputy Jepko signed a probable cause affidavit for the arrest of Derek Snead on charges of Burglary and Larceny at the home of Nancy Herndon and Makayla Phillips. [Doc. 90-11R-W; Doc. 90-12I-J]. The

State Attorney issued an Information charging Snead and seeking a capias for his arrest. [Doc. 90-12K]. On March 17, 2021, Snead was arrested by CCSO Deputy Montemurno pursuant to the capias. [Doc. 90-12L]. And in August 2021, the State Attorney issued a nolle prosequi as to both charges. [Doc. 90-12M].

### 4. 11.21.21 ARREST BY LAKE CITY POLICE DEPARTMENT

On November 21, 2021, a Lake City Police Department (LCPD) officer initiated a traffic stop of Snead following an alert posted by CCSO for a white truck towing a trailer, the driver of which was suspected of criminal activity related to children. [Doc. 90-18]. The LCPD officer then detained Snead and investigated him for criminal traffic offenses while CCSO investigated and ruled out criminal activity by Snead regarding the alert. [Doc.90-18]; [Doc.90-2, pp.121-128, 339-340]. The LCPD officer ultimately arrested Snead on the criminal traffic charges. [Doc. 90-18; Doc. 90-2, pp.121-128, 339-340].

### 5. 11.28.21 MEETING WITH PLAINTIFF REGARDING CIVIL COMPLAINT

On November 28, 2021, CCSO Deputy Wetherington met Derek Snead at a restaurant to obtain additional information related to civil theft and harassment complaints made by Snead over the telephone in the preceding three weeks. [Doc. 90-14]. Wetherington and Snead disagreed about whether the reports were within CCSO's jurisdiction and whether they were criminal matters, so Wetherington's corporal and an LCPD officer eventually responded. [Doc. 90-14]. The CCSO corporal had difficulty understanding Snead's reports due to their lengthiness, the fact he had drafted them in the third-person, and the different issues at play, so she asked Snead additional questions. [Doc. 90-14]. During the interaction, Snead and the corporal voiced their frustrations and the corporal eventually ended the encounter completely when Snead called Wetherington "a piece of s[***]." [Doc. 90-14, 17:31].

### 6. 12.04.21 REMARKS BY CCSO DEPUTY LUCAS

On December 4, 2021, CCSO Deputy Scott was dispatched to 1711 NW Turner Avenue related to a burglary reported by Charles Lucas. [Doc. 90-15; Doc. 90-16; Doc. 90-17]. On scene, it became apparent that rightful possession of the property was in dispute between Charles Lucas, claiming to be the rightful tenant, another individual claiming to be the new, rightful tenant, and Derek Snead, the landlord. [Doc. 90-15; Doc. 90-16; Doc. 90-17]. CCSO Sgt. Lucas was eventually dispatched, and it was determined Snead had begun moving a new tenant into the residence before the judicial eviction of the old tenant (Charles Lucas) had been completed. [Doc. 90-15; Doc. 90-16; Doc. 90-17]. All parties were on scene. [Doc. 90-17]. Tenant Lucas spoke poorly of Snead throughout the interaction, and after Snead continuously expressed his displeasure at the old tenant being permitted to stay, Sgt. Lucas mentioned CCSO's investigations into Snead's past, fraudulent behavior. [Doc. 90-17] When questioned by the new tenant, Sgt. Lucas also acknowledged that some of Snead's dealings were legitimate. [Doc. 90-17]

### 7. 01.14.22 EXCLUSION FROM COURTHOUSE BY CCSO DEPUTY STALNAKER

On or about January 14, 2022, Snead went to the Columbia County courthouse for a tax deed auction. [Doc. 90-2, p.348]. There he encountered CCSO Deputy and Bailiff Stalnaker at the entrance and made a vulgar, sexual comment about Stalnaker's former wife—an attorney against whom Snead had litigated. [Doc. 90-2. pp.350-351]; [Doc. 90-3, p.14]. Deputy Stalnaker did not know Snead and was surprised by the remark and behavior. [Doc. 90-3, pp. 13-19]. He followed Snead to the elevator where the two briefly exchanged words. As a deputy at the courthouse, it was Stalnaker's job to protect judges, maintain order, and keep the peace, so he ordered Snead to leave.

Shortly afterward, Snead called to complain and was advised that he could return to the courthouse. [Doc. 90-1, p.19; Doc. 90-3, pp. 18-19]. The auction had concluded and Plaintiff complains he missed out on buying properties. [Doc.90-1, p.19].

### 8. 04.01.22 ARREST ON A WARRANT, ADDED CHARGE OF RESISTING OFFICER WITHOUT VIOLENCE

On April 1, 2022, CCSO arrested Snead pursuant to a warrant obtained by Lake City PD.[1] [Doc. 90-13E; Doc. 90-12N; Doc.90-12Q; Doc. 90-12P]. During the course of CCSO deputies' attempts to apprehend Snead, he ignored a deputy's command instead retreating into his residence and locking the door behind him [Doc.90-12Q, 1:20-1:35]. After multiple refusals of deputies' commands, Snead was taken into custody on the warrant. [Doc. 90-12P, 10:25-14:50; Doc.90-12Q, 12:30-14:35; Doc. 90-12O]. On April 19, 2022, the State Attorney issued an information charging Snead with resisting an officer without violence for the matter. [Doc. 90-13E, Doc. 90-13F]. The State Attorney filed a nolle prosequi as to that charge on June 6, 2022. [Doc. 90-13G]

### 9. 06.20.22 SNEAD REPORT OF STOLEN TRAILER

On or about June 20, 2022, Snead reported to CCSO that David Poppell had stolen his trailer. [Doc. 90-11O]. Over the next 3.5 months, CCSO investigated the matter by reviewing evidence provided by Snead, speaking with witnesses, and interrogating Poppell about the reported theft. [Doc. 90-11O]. For lack of evidence, no arrest was made. [Doc. 90-11O].

### 10. 06.24.22 DETENTION ON A CAPIAS FOR THEFT FROM TENANT FLOWERS' TOOL SHED

In February 2022, following an investigation, CCSO Detective Elliott swore out a probable cause affidavit about Derek Snead for Burglary and Larceny of tools in the

---

[1] CCSO had no involvement in securing the warrant. [Doc.90-2, pp.140-153, 367-368].

shed of tenant Jody Flowers. [Doc. 90-12PP; Doc. 90-11X]. Flowers claimed that Snead had stolen his tools because Flowers was behind on rent and the two had a falling out. In May 2022, the State Attorney issued an Information charging Snead and requesting a capias be issued for Snead's arrest. [Doc. 90-12QQ]. Snead was detained on June 24, 2021, during a traffic stop after an NCIC/FCIC search revealed the capias. [Doc. 90-11Y]. Snead's attorney explained to the deputy over the phone that the charge had just been dropped. [Doc. 90-2, pp.387-390; Doc. 90-11Y]. After the deputy confirmed with the State Attorney's Office that the charges had in fact been dropped earlier that day and the capias should be withdrawn, Snead was released from the traffic stop. [Doc. 90-2, pp. 387-390; Doc. 90-11Y; Doc. 90-12RR].

### 11.  07.27.22 MARTINEZ REPORT OF FRAUD IN SALE OF PROPERTY

In July 2022, Alex Martinez and his wife lived out of state but sought to purchase property in Columbia County. Online they located a property advertised by Seller "Lucy Allen." [Doc. 90-8, Exh. 93]. At a pre-arranged meeting with the Seller, Derek Snead appeared and entered into a contract with them for the purchase of the property and the Martinezes delivered $6,000 as payment. The couple became suspicious, so they reviewed property appraiser records and spoke with the current tenant who told them she had not sold the property to Plaintiff. [Doc. 90-8, Exh. 93]. The couple then cancelled part of their payment and sought help from CCSO. In October 2022, following her review of documents and contact with Snead's attorney and the current occupant of the residence, CCSO Detective DaSilva closed the investigation into the matter as a civil dispute. [Doc. 90-8, Exh. 93].

### 12.  COUNTY COMMISSION MEETING

Snead alleges he attended four County Commission meetings in 2021-2022, but cannot recall the precise dates. [Doc. 90-2, pp.557-567; Doc. 90-20]. Snead attended and spoke at the June 3, 2021, meeting.[2] During the public comment period, Snead discussed improper use of Sheriff K-9 units and contends the Sheriff "lectured" him. [Doc. 90-1, p.24; Doc. 90-2, pp.557-567]. The Chairperson threw him out of the meeting. [90-2, p. 562-564].

### 13.  12.02.22 REPORT OF BATTERY BY TENANT BREWINGTON

On December 2, 2022, CCSO responded to the 911 call of Elijah Brewington reporting he had been slapped in the face by Derek Snead. [Doc. 90-19]. In December 2022, Snead provided CCSO Detective Watson with multiple reports claiming that a past tenant on one of his properties was causing damage.  [Doc. 90-2, pp.398-399]. After investigating the reports independently and collaboratively with Snead, Watson closed the investigations in March 2023, noting that all leads had been exhausted. [Doc. 90-11P].  Shortly after making his initial reports to Watson in December 2022, Snead reported that he had spotted Brewington on Snead's property,  Snead then followed Brewington to a nearby hotel where CCSO responded and conducted an investigation.  [Doc. 90-2, pp.400-401].  CCSO did not arrest Brewington, but during the encounter with CCSO, he was threatened with a trespass warning from the hotel.  [Doc. 90-1, p. 15; Doc. 90-19].

### 14.  01.07.23 SNEAD COMPLAINT REGARDING SQUATTERS

On January 7, 2023, Snead reported that squatters were on his property and had been committing theft.  [Doc. 9011Z; Doc. 90-1, p.21].  CCSO investigated the matter, reviewing photographs and video provided by Snead, and eventually interrogated one of

---

[2] Plaintiff erroneously cites this as June 13, a Sunday.

the two suspects named by Snead while that suspect was in jail for a separate issue, but no arrests were made due to lack of evidence. [Doc. 90-11Z; Doc. 90-11AA; Doc. 90-11BB].

### 15. 02.17.23 TRESPASS WARNING FOR PROPERTY OF BOWSER

On February 17, 2023, CCSO Deputy Hodges responded to 321 Battle Hill Lane. [Doc. 90-12BB; Doc. 90-12CC]. Upon arrival Hodges made contact with Belinda Bowser and her son, Jonathan Carter. [Doc. 90-12BB; Doc. 90-12CC]. Carter advised Hodges that Snead had come over to the residence wanting to buy the property from Bowser. [Doc. 90-12BB; Doc. 90-12CC]. When Carter reviewed the paperwork, he came to believe it was a fake transaction. [Doc. 90-12BB; Doc. 90-12CC] Snead was unable to recover the paperwork from Carter and did not remain on scene. [Doc. 90-12BB; Doc. 90-12CC]. Bowser requested Snead be trespassed from the property, which Hodges did with a phone call to Snead. [Doc. 90-12BB; Doc. 90-12CC].

### 16. 04.2023 CLOSURE OF TD BANK ACCOUNTS

In April 2023, one of Snead's tenants advised him that TD Bank told the tenant that Snead was a fraud based on information provided by "the cops." [Doc. 90-2, pp. 519-520]. Later that month, Snead received a communication from TD Bank that his accounts there had been closed. No reason was given; the communication advised none was required. [Doc. 90-2, pp. 427-430; 519-520]. TD Bank returned Plaintiff's money and he continues to bank with other banks. [90-2, pp. 520-522].

### 17. 05.08.23 PC AFFIDAVIT FOR CRIMINAL MISCHIEF OF NEIGHBOR'S FENCE/GATE

On May 6, 2023, CCSO Deputy Newman was dispatched to 281 SW Foster Glen regarding Plaintiff knocking down part of Plaintiff's neighbor's fence and gate. [Doc. 90-12DD]. On May 8, 2023, following an investigation, Newman swore out an affidavit. [Doc.

90-11EE; Doc. 90-12DD-EE].   On or about June 7, 2023, the State Attorney determined that it would not prosecute.  [Doc. 90-12FF].

### 18.    06.15.23 ARREST FOR OFFENSES AGAINST TENANT HAM

On June 15, 2023, (at the same time as his arrest for the February 2023 incident at Piute Way, discussed below), CCSO Corporal Douglas signed a probable cause affidavit for and arrested Plaintiff on charges of Grand Theft and Stalking after weeks of investigation in multiple complaints against Plaintiff and Dillon Lollis by, among other residents at 172 NW Wallace Place, Karen Ham. [Doc. 90-12GG; Doc. 90-12II-KK; Doc. 90-12HH;  Doc.90-12LL].  On June 26, 2023, the State Attorney issued separate Informations charging Snead and an employee for Burglary of a Dwelling, Grand Theft, and Stalking. [Doc. 90-12NN-12MM].  On January 3, 2024, the State Attorney entered a nolle prosequi as to all three counts against Snead.  [Doc. 90-12OO].

### 19.    06.15.23 ARREST FOR OFFENSES AGAINST TENANT MORRIS

On June 15, 2023, CCSO Corporal Alford signed a probable cause affidavit and arrested Snead after a months long investigation of criminal activity reported and sworn to by Tenant Tona Morris at 309 Piute Way.   [Doc. 90-12R; Doc. 90-12U; Doc. 90-12V; Doc. 90-12S; Doc. 90-11CC; Doc. 90-12W]. On June 27, 2023, the State Attorney filed an Information charging Snead [Doc. 90-12X].  All counts were nolle prossed on February 26, 2024 [Doc. 90-12AA].

### THE COLUMBIA COUNTY SHERIFF'S OFFICE

CCSO is an accredited agency governed by a set of policies known as General Orders. [Doc. 90-11]. Of particular relevance to the issues in this case are the following General Orders: 1.6 – Code of Conduct; 11.3 – Command Protocol; 11.4 – Oath and Canon of Ethics; 11.5 – Limits of Authority; 12.1 – General Orders, et al.; 33.5 –

Counseling and Disciplinary Procedures; 35.1 – Training; 35.2 – Field Training Officers/Instructors; 35.3 – New Supervisor Training Program; 41.1 – Incident Reporting; and 45.5 – Criminal Investigations & Case Management. [Doc. 90-11D-N]. The policies make clear, Sheriff Hunter is the final policymaker. [Doc. 90-11H, §12.1, D.].

## MEMORANDUM OF LAW

### I. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. If a non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment by establishing the nonexistence of a genuine issue of material fact as to an essential element of a non-moving party's claim or affirmative defense. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### II. §1983 CLAIMS FAIL FOR LACK OF MONELL CUSTOM OR POLICY

| Count | Claim for Relief |
|-------|------------------|
| I | §1983 Fourth Amendment False Arrest |
| V | §1983 Fourteenth Amendment Procedural & Substantive Due Process |
| VI | §1983 Malicious Prosecution |
| XIV | First Amendment Retaliation for Freedom of Speech |
| XVII | §1983 Civil Conspiracy |

To impose §1983 liability on Sheriff Hunter, Plaintiff must establish (1) that his constitutional rights were violated; (2) that the Sherriff had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. See McDowell v. Brown, 392 F. 3d 1283, 1289 (11th Cir. 2004); Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 694 (1978). To establish a custom or policy, Plaintiff must identify either (1) an officially promulgated

policy; (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the Sheriff; or (3) an unconstitutional decision ratified by a final policymaker. Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016).

First, no constitutional right was violated. Plaintiff alleges the following incidents constituted false arrest or malicious prosecution under §1983:[3]

| Incident # | Date | Brief Description |
|---|---|---|
| 1. | 05.25.20 | Arrest for Fraud & Forgery of Quitclaim Deed |
| 2. | 06.17.20 | PC Affidavit for Fraudulent Sales to Multiple Purchasers |
| 3. | 03.17.21 | Arrest for Burglary & Jewelry Theft from Tenant |
| 8. | 04.01.22 | Arrest on a Warrant, Added Charge of Resisting Officer without Violence |
| 10. | 06.24.22 | Detention On a Capias for Theft from Tenant's Tool Shed |
| 15. | 02.17.23 | Trespass Warning for Property of Tenant Bowser |
| 17. | 05.08.23 | PC Affidavit for Criminal Mischief of Neighbor's Fence/Gate |
| 19. | 06.15.23 | Arrest for Burglary, Stalking et al of Tenant Morris |

[Doc. 90-1, pp. 2-4, 9-13].

Regarding his claims of false arrest or malicious prosecution, Plaintiff was arrested a total of five times. For Incidents 1, 3, 8, and 10, Plaintiff was arrested pursuant to a valid capias or warrant. An arrest under a capias or warrant cannot be false. Hernandez v. Wells, No. 8:21-CV-1488-KKM-UAM, 2023 WL 9184480, at *14 (M.D. Fla. Nov. 30, 2023). Plaintiff's fifth arrest, for Incident 19, was based on probable cause supported by photographs, a purchase agreement, and a sworn statement of Tona Morris. "[A]n officer is entitled to rely on a victim's criminal complaint as support for probable cause." Rankin v.

---

[3] The Amended Complaint [Doc.27] improperly incorporates all paragraphs and incidents into each count and claim for relief. Plaintiff's Answers to Interrogatories narrow the relevant incidents. For clarity, at the beginning of the legal analysis for each claim, Sheriff Hunter will identify solely those incidents identified by Plaintiff in his Interrogatory Answers as being pertinent to that particular count.

Evans, 133 F.3d 1425, 1441 (11th Cir. 1998). Incidents 2, 15, and 17 entailed solely probable cause affidavits which were completed by a deputy but never resulted in an arrest or criminal proceedings.

Plaintiff alleges these incidents are procedural due process violations:

| Incident # | Date | Brief Description |
|---|---|---|
| 4. | 11.21.21 | Arrest by Lake City Police Department |
| 5. | 11.28.21 | Meeting with Plaintiff Regarding Civil Complaint |
| 6. | 12.04.21 | Remarks by CCSO Deputy Lucas |
| 9. | 06.20.22 | Snead Report of Stolen Trailer |
| 10. | 06.24.22 | Detention On a Capias for Theft from Tenant Flowers' Tool Shed |
| 13. | 12.02.22 | Report of Battery by Tenant Brewington |
| 14. | 01.07.23 | Snead Complaint Regarding Squatters |
| 15. | 02.17.23 | Trespass Warning for Property of Bowser |
| 19. | 06.15.23 | Arrest for Burglary, Stalking et al of Tenant Morris |

[Doc. 90-1, pp. 13-17]; while the following are violations of substantive due process:

| Incident # | Date | Brief Description |
|---|---|---|
| 10. | 06.24.22 | Detention On a Capias for Theft from Tenant's Tool Shed |
| 15. | 02.17.23 | Trespass Warning for Property of Bowser |
| 18. | 06.15.23 | Arrest for Theft/Stalking of Tenant Ham |
| 19. | 06.15.23 | Arrest for Burglary, Stalking et al of Tenant Morris |

[Doc. 90-1, pp. 13-17].

A procedural due process violation is found where a plaintiff establishes (1) a deprivation of his constitutionally protected interest, (2) through state action, (3) using constitutionally inadequate process. Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). To state a substantive due process claim, Snead must allege (1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. Hoefling, 811 F.3d at 1282 (Internal citations and quotations omitted).

Snead cannot establish the existence of any constitutional deprivation arising from the incidents about which he complains, let alone inadequate process. Incident 4 was an arrest by another agency. Incidents 5, 9, and 14 involved CCSO taking information from Plaintiff at his behest regarding complaints he wished to make. Any remarks by Deputy Lucas in Incident 6 did not deprive Plaintiff of any constitutional right. As described above, Plaintiff's detention on a capias in Incident 10 and his arrest based on probable cause in Incident 19 are lawful. The report received from a tenant that Plaintiff slapped him in Incident 13 which resulted in no action against Plaintiff and the issuance of a trespass warning on behalf of a property owner in Incident 15 can hardly be claimed to state a deprivation of a constitutional right. Snead fares no better on his claims of violations of his substantive due process rights.

Plaintiff alleges the following incidents relate to his claims of First Amendment retaliation:

| Incident # | Date | Brief Description |
|---|---|---|
| 1 | 05.25.20 | Arrest for Fraud & Forgery of Quitclaim Deed |
| 5. | 11.28.21 | Meeting with Plaintiff Regarding Civil Complaint |
| 7. | 01.14.22 | Exclusion from Courthouse by CCSO Deputy Stalnaker |
| 10. | Unknown | Exchange at County Commission Meeting |
| 13. | 12.02.22 | Report of Battery by Tenant Brewington |
| 18. | 06.15.23 | Arrest on PC for Theft/Stalking of Tenant Ham |

[Doc. 90-1, pp. 23-26]. To sustain a First Amendment retaliation claim, "the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

Plaintiff's only allegation regarding any retaliatory action from his speech at a County Commission meeting is that the Sheriff "lectured" him. He does not identify any impact on his speech. Plaintiff fails to articulate how a tenant's report of battery to law enforcement (which did not even result in any charges against him) is retaliation for anything, much less any identifiable protected speech. Nor does he make the necessary showings for his arrest pursuant to a probable cause affidavit.

Plaintiff alleges the following incidents relate to his claims of § 1983 civil conspiracy:

| Incident # | Date | Brief Description |
|---|---|---|
| 4. | 11.21.21 | Arrest by Lake City Police Department |
| 5. | 11.28.21 | Meeting with Plaintiff Regarding Civil Complaint |
| 8. | 04.01.22 | Arrest on a Warrant, Added Charge of Resisting Officer without Violence |

[Doc. 90-1, pp. 26-30].

Civil conspiracy under § 1983 requires: (1) a violation of his federal rights under color of state law; (2) an understanding among the defendants to violate those rights; and (3) a resultant actionable harm." N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla., 418 F. Supp. 3d 957, 998–99 (N.D. Fla. 2019) (citing Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010). Plaintiff cannot prove any of the elements of conspiracy. There was no violation of his rights. There was no understanding between parties to violate said rights. There was no resultant harm.

For Incident 4, Plaintiff was arrested by another agency for events wholly unrelated to CCSO. In incident 5, CCSO met with Plaintiff to take information regarding a complaint ultimately deemed to be a civil matter. And for 8, Plaintiff was arrested on a warrant.

Second, assuming *arguendo* Plaintiff demonstrated a constitutional violation in Counts I, V, VI, XIV, or XVII[4], Plaintiff is unable to establish element 2 – a custom or policy of deliberate indifference, or element 3 – that caused the violation. The Sheriff has detailed General Orders in place, approved by an accrediting agency, addressing **all** of the above-referenced "custom or policy" allegations. The most relevant policies include 1.6 mandating deputy integrity and a respect for constitutional rights; 11.3 imposing a stringent command structure and controls on supervisory authority; 11.5 limiting all deputy authority to the constraints of law and policy; 12.1 providing *inter alia* that "only the Sheriff has the authority to issue, modify, or approve any policy or procedure promulgated by General Orders[;]" 33.5 imposing training and providing for disciplinary action; #35.1, #35.2, and #35.3 providing for extensive training; #41.1 governing incident reporting; and #45.5 governing criminal investigations and arrests upon probable cause or pursuant to an arrest warrant. Plaintiff has not, and cannot, identify any of these policies which is patently deliberately indifferent to the constitutional rights of the citizenry.

Further, after extensive discovery, Plaintiff is unable to establish a custom or practice on the part of the Sheriff which is so widespread as to constitute a custom or usage with the force of law. constituting deliberate indifference to constitutional rights. Perez v. City of Opa-Locka, 629 F. Supp. 3d 1164, 1183–84 (S.D. Fla. 2022).

If any single incident by a subordinate violated Sheriff policies and caused a constitutional violation (they did not), it is insufficient as a matter of law to make the requisite Monell showing absent individual action or ratification by the policymaker. Perez, 629 F. Supp. 3d at 1184. Sheriff Hunter alone is the final policymaker. [Doc. 90-11H].

---

[4] Plaintiff's Count XVII fails to even *allege* a custom or policy exists as a basis for his claims.

As for ratification, there are no actions by subordinates contested by Plaintiff for which the Sheriff had knowledge, had an opportunity to review, and agreed with both the decision and its basis **prior** to the action becoming final. Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015). Because the Sheriff did not have a chance to review the actions of Bulthuis or Swears (or others) until *after* they occurred, Plaintiff's claim fails.

There is no evidence of record of Sheriff Hunter himself taking any actions[5] against Plaintiff so as to render him liable for a single unconstitutional incident. Plaintiff's §1983 claims against Sheriff Hunter fail and he is entitled to summary judgment as a matter of law on Counts I, V, VI, XIV, and XVII.

## III. COUNT II – COMMON LAW FALSE ARREST FAILS AS A MATTER OF LAW

Relevant incidents:

| Incident # | Date | Brief Description |
|---|---|---|
| 1. | 05.25.20 | Arrest for Fraud & Forgery of Quitclaim Deed |
| 2. | 06.17.20 | Probable Cause Affidavit for Fraudulent Sales to Multiple Purchasers |
| 3. | 03.17.21 | Arrest for Burglary & Jewelry Theft from Tenant |
| 8. | 04.01.22 | Arrest on a Warrant, Added Charge of Resisting Officer without Violence |

Plaintiff sues the Sheriff for false arrest under Florida common law (Count II) [Doc. 27, ¶¶111-127] specifically, contesting Incidents #1-3, and #8. [Plaintiff's Answers to Interrogatories # 2-4]. To succeed on a false arrest claim, "a plaintiff must establish a lack of probable cause, and an arrest. Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022). Probable cause bars a claim for false arrest under Florida law just as it does under federal law. Crocker v. Beatty, 995 F.3d 1232, 1245 (11th Cir. 2021).

---

[5] Plaintiff alleges solely that Sheriff Hunter spoke after him at a County Commission meeting [Doc. 90-2, pp.557-567]; or "lectured him" on sovereign immunity. [Doc.90-1, p.24].

"An arrest warrant creates a presumption, albeit a rebuttable one, that probable cause existed for the arrest." Turner v. Williams, 65 F.4th 564, 582 (11th Cir. 2023); see also Hernandez v. Wells, No. 8:21-CV-1488-KKM-UAM, 2023 WL 9184480, at *14 (M.D. Fla. Nov. 30, 2023) (recounting the "well-established rule that an arrest under a capias warrant cannot be a false arrest, so long as the capias is validly issued.") (citing Jackson v. Navarro, 665 So. 2d 340, 341 (Fla. 4th DCA 1995).

Plaintiff's arrests for Incidents 1, 3, and 8 were lawfully made pursuant to capiases or warrants. Plaintiff was never arrested for Incident #2. The Sheriff is entitled to summary judgment on Count II.

**IV.  PLAINTIFF'S COUNT IX TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP CLAIMS FAIL AS A MATTER OF LAW**

Through Count IX against the Sheriff, Plaintiff brings claims of tortious interference with a business relationship pursuant to Florida common law for the following incidents: [Doc. 27, ¶¶ 208-216]

| Incident# | Date | Brief Description |
|---|---|---|
| 6. | 12.04.21 | Remarks by CCSO Deputy Lucas |
| 7. | 01.14.22 | Exclusion from Courthouse by CCSO Deputy Stalnaker |
| 10. | 06.24.22 | Detention On a Capias for Theft from Tenant's Tool Shed |
| 11. | 07.27.22 | Martinez Report of Fraud in Sale of Property |
| 14. | 01.07.23 | Snead Complaint Regarding Squatters |
| 16. | 04.2023 | Closure of TD Bank Accounts |
| 17. | 05.08.23 | PC Affidavit for Criminal Mischief |
| 18. | 06.15.23 | Arrest for Theft/Stalking of Tenant Ham |

[90-1, pp.17-23].

To prevail in a claim for tortious interference with a business relationship, a plaintiff must show: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and

unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. <u>E.g.</u>, <u>Seminole Tribe v. Times Publ'g Co.</u>, 780 So.2d 310, 315 (Fla. 4th DCA 2001). "Under Florida law, an action for tortious interference with a business relationship generally requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" <u>Aulicino v. McBride</u>, No. 616CV878ORL31TBS, 2017 WL 1113475, at *2 (M.D. Fla. Mar. 24, 2017) (quoting <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 815 (Fla. 1994)). For example, an offer to sell does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. <u>Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.</u>, 361 So.2d 769 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla.1979).

"Embedded within the essential elements of the tort of intentional interference with a business relationship is the legal requirement that the plaintiff prove causation." <u>St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs.</u>, Inc., 784 So. 2d 500, 504 (Fla. 5th DCA 2001). "[C]ausation is established when one intentionally and improperly interferes with a business relationship between two other parties by 'inducing or otherwise causing' one party to breach or sever the business relationship." <u>Id.</u> (quoting <u>Gossard v. Adia Services, Inc.</u>, 723 So.2d 182 (Fla.1998).

Plaintiff's claim that CCSO Sgt. Lucas tortiously interfered with his relationship with a purchaser of one of his properties in Incident #6 [Doc.90-1, pp.18-19] fails for lack of causation and lack of intentional and unjustified interference. Sgt. Lucas was investigating a burglary reported by the current tenant of the residence and came to find

out that Snead had advised the purchaser that the tenant was gone, which the tenant clearly disputed as he was at the residence when Sgt Lucas arrived. Further, the tenant was the one speaking ill of Plaintiff before Sgt. Lucas arrived and thereafter throughout the interaction. Although Sgt. Lucas did mention investigations into Snead's past business dealings and fraudulent behavior, he also acknowledged that some of Snead's dealings were legitimate.

Plaintiff's claim that CCSO Deputy Stalnaker tortiously interfered by evicting him from the Courthouse before he could attend a property auction in Incident #7 [Doc.90-1, p.19] fails for lack of a business or contractual relationship, lack of causation, and lack of intentional and unjustified interference. An auction by its nature is simply an offer to sell to the highest bidder, not a business relationship.

Plaintiff's claim that CCSO deputies tortiously interfered with his relationship with Jody Flowers by investigating Flower's report in Incident #10 [Doc.90-1, pp.19-20] fails for lack of causation and intentional and unjustified interference. CCSO was investigating a theft that Flowers himself reported that Snead committed. Further, Flowers was already behind on his rent and clearly any relationship with Snead he had was falling apart. Likewise, Plaintiff's claim that the foregoing also tortiously interfered with his ability to enter the courthouse and attend a tax deed auction [Doc.90-1, p.20] also fails. Further, as just discussed, an auction by its nature is simply an offer to sell to the highest bidder, not a business relationship.

Plaintiff's claim that CCSO deputies tortiously interfered with the sale of one of his properties to the Martinez's in Incident #11 [Doc.90-1, pp.20-21] fails for lack of intentional and unjustified interference and causation. The couple became suspicious

of Snead on their own after they investigated the property appraiser's website and were advised by the person currently living on the property that she had not sold it to Snead. CCSO did not become involved until the Martinez's cancelled part of their payment and then came to CCSO with their suspicions.

Plaintiff's claim that CCSO deputies tortiously interfered with a business relationship by failing to investigate squatters on his property that were stealing cameras and attempted to run Snead over in Incident #14 [Doc.90-1, p.21] fails for lack of a contractual or business relationship with merely prospective tenants, causation, and intentional and unjustified interference. To any degree CCSO was even involved, they were investigating the incident at the request of Snead.

Plaintiff's claim that CCSO deputies tortiously interfered with Snead claims CCSO deputies tortiously interfered with a business relationship between him and TD Bank in Incident #16 [Doc.90-1, p.22] fails for lack of causation and lack of intentional and unjustified interference. Indeed, TD Bank did not provide Senad with a reason for closing his accounts and informed him that they did not need one. Snead's belief in CCSO's involvement is the product of layered hearsay about "the cops" from a supposed bank employee to Snead's tenant to Snead, and from an unreasonable inference drawn by CCSO's and LCPD's involvement in lawful investigations involving Snead several years earlier.

Plaintiff's claim that CCSO deputies tortiously interfered with a business relationship by investigating his neighbor's report that Snead had destroyed part of her fence in Incident #17 [Doc.90-1, pp. 21-22] fails for lack of a contractual or business

relationship, causation, or intentional and unjustified interference. CCSO was simply investigating a criminal mischief reported by Snead's neighbor.

Plaintiffs claim that CCSO deputies tortiously interfered with his business relationship with Dillon Lollis in Incident #18 [Doc. 90-1, pp.22-23] fails for lack of intentional and unjustified interference. CCSO's actions with respect to Plaintiff and Lollis were prompted by Ham's report that Plaintiff and Lollis were stealing things from their property. Plaintiff's claims of tortious interference cannot be sustained.

## V.     PLAINTIFF'S COUNT XI ABUSE OF PROCESS CLAIMS FAIL AS A MATTER OF LAW

Through Count XI against the Sheriff, Plaintiff brings claims of abuse of process under Florida's common law.  [Doc. 27, ¶¶ 225-230].

| Incident # | Date | Brief Description of charges |
|---|---|---|
| 1. | 05.25.20 | Arrest for Fraud & Forgery of Quitclaim Deed |
| 2. | 06.17.20 | PC Affidavit for Fraudulent Sales to Multiple Purchasers |
| 3. | 03.17.21 | Arrest for Burglary & Jewelry Theft from Tenant |
| 4. | 11.21.21 | Arrest by Lake City Police Department |
| | 02.18.22 | Hall's incident |
| 8. | 04.01.22 | Arrest on a Warrant, Added Charge of Resisting Officer without Violence |
| 10. | 06.24.22 | Detention On a Capias for Theft from Tenant's Tool Shed |
| 16 | 04.2023 | Closure of TD Bank Accounts |
| 18. | 06.15.23 | Arrest for Theft/Stalking of Tenant Ham |

[Plaintiff's Answers to Interrogatories. 4-9].

A Florida common law abuse of process claim requires (1) an illegal, improper, or perverted use of process by the defendant; (2) an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) damage to the plaintiff as a result of the defendant's action. Valdes v. GAB Robins N. Am., Inc., 924 So. 2d 862,

867 (Fla. 3d DCA 2006) (citing Hardick v. Homol, 795 So.2d 1107, 1111 n. 2 (Fla. 5th DCA 2001).

A plaintiff must prove process was used for an immediate purpose other than that for which it was designed, regardless of an incidental or concurrent motive of spite or ulterior purpose. White v. Lemma, 947 F.3d 1373, 1380 (11th Cir. 2020) (citing S & I Invests. v. Payless Flea Market, Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010)). "[T]he tort of abuse of process is concerned with the improper use of process after it issues." Della–Donna v. Nova University, Inc., 512 So.2d 1051, 1055–56 (Fla. 4th DCA 1987); "When 'the process was used to accomplish the result for which it was intended, regardless of an incidental or concurrent motive of spite or ulterior purpose, there is no abuse of process.' Id.

With respect to Plaintiff's allegations of abuse of process, the record is wholly devoid of any process perverted by the Sheriff, any ulterior motive for such a process, and any damage to Snead. Each of the Incidents alleged involved a detention or arrest on capiases, warrants, or probable cause supported by sworn witness statements; affidavits which were completed based on witness statements and/or investigations but which were merely submitted to the State Attorneys' Office, and the closing of accounts by Plaintiff's bank. Any suggestion that Sheriff Hunter had any responsibility therefor is pure conjecture. This claim also references the Hall's incident which is the subject of the complaint against the individual defendants Bulthuis and Swears and described in their Motion for Summary Judgment. [Docs.90-4, 90-5, 90-11A, and 91]. Once again, no process was initiated by CCSO and this claim fails for failure to prove any elements.

## VI.   PLAINTIFF'S COUNT XIII NEGLIGENT SUPERVISION AND RETENTION CLAIM FAILS AS A MATTER OF LAW

Through Count XIII against the Sheriff, Plaintiff brings claims of negligent supervision and retention under Florida's common law arising solely from the above-referenced incident involving Hall's Pump & Well. [Doc.27, ¶¶ 237-243]. His claim is nonsensical in that it alleges the incident, which involved deputies Bulthuis and Swears, was negligent supervision and retention.

"Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." Lee v. Harper, 328 So. 3d 384, 388 (Fla. 1st DCA 2021) (citing ACTS Ret.-Life Cmtys., Inc. v. Estate of Zimmer, 206 So. 3d 112, 114 (Fla. 4th DCA 2016).  A claim for negligent supervision and retention must be based on an injury resulting from a tort which is recognized under common law. Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006) (citing Watson v. The City of Hialeah, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989)).

Plaintiff fails to allege what would have placed Sheriff Hunter on notice that either of these deputies was unfit prior to this time. And, contrary to Plaintiff's argument of negligence, the evidence demonstrates that when Snead made his complaint, Sheriff Hunter investigated and took disciplinary action against the deputies. Plaintiff has failed to prove any common law tort and cannot show any negligent supervision.

## VII.   PLAINTIFF'S COUNT XVI COMMON LAW CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

Through Count XVI against the Sheriff and the City of Lake City, Plaintiff brings a claim of civil conspiracy pursuant to Florida common law.  [Doc. 27, ¶¶ 256-266].

| Incident # | Date | Brief Description |
|---|---|---|
| 4. | 11.21.21 | Arrest by Lake City Police Department |
| 5. | 11.28.21 | Meeting with Plaintiff Regarding Civil Complaint |
| 8. | 04.01.22 | Arrest on a Warrant, Added Charge of Resisting Officer without Violence |

[Doc.90-1, pp. 26-30].

The elements of a civil conspiracy in Florida are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).

Plaintiff cannot prove any of the four elements of conspiracy. There was no unlawful act. There was no agreement between parties to commit the act. There was no overt act in furtherance thereof. And there was no damage to Plaintiff. For Incident 4, Plaintiff was arrested by another agency for events wholly unrelated to CCSO. In Incident 5, CCSO met with Plaintiff to take information regarding a complaint ultimately deemed to be a civil matter. And for 8, Plaintiff was arrested on a warrant.

## Conclusion

Plaintiff complains of many encounters with law enforcement over several years. A review of the particulars of each incident reveals that Plaintiff's own suspicious business dealings are generally the impetus for any law enforcement contact, and that CCSO's actions are lawful and appropriate under the given circumstances. Plaintiff has no claim against Sheriff Hunter.

Respectfully submitted this 11th day of September 2024.

**COPPINS MONROE, P.A.**

*/s/ Brandon W. White*
Gwendolyn P. Adkins, Esq.
FL Bar No. 0949566
Brandon W. White, Esq.
FL Bar No. 84788
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420
Fax: 850-422-2730
gadkins@coppinsmonroe.com
bwhite@coppinsmonroe.com

ATTORNEYS FOR DEFENDANTS MARK HUNTER, HOWARD BULTHUIS, AND AARON SWEARS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b) this document is being served on all parties by email to the agency designated by each party for that purpose.

*/s/ Brandon W. White*
Attorney